131 Cal.App.3d 386 (1982)
182 Cal. Rptr. 438
DEBRA L. BLOCK, Plaintiff and Appellant,
v.
SACRAMENTO CLINICAL LABS, INC., et al., Defendants and Respondents.
Docket No. 20748.
Court of Appeals of California, Third District.
April 30, 1982.
*387 COUNSEL
Van Dyke, Shaw & Schuckman and William A. Schuckman for Plaintiff and Appellant.
Diehl, Steinheimer, Riggio, Haydel & Mordaunt and Peter J. Kelly for Defendants and Respondents.
OPINION
BLEASE, J.
(1a) In this appeal we determine that an action for professional negligence may be defeated because liability is predicated upon the publication of an injurious falsehood, consisting of the communication of a negligently prepared report to the district attorney for purposes of criminal action, which is absolutely privileged under Civil Code section 47, subdivision 2. We affirm the judgment.

FACTS
In December 1977, plaintiff's infant daughter died. An autopsy was performed. As part of its investigation into the cause of death, the San Joaquin County Sheriff-Coroner's office submitted samples of the baby's blood to defendant Beam.[1] Beam, a toxicologist, performed a *388 blood analysis and determined the child had a blood salicylate concentration of 670 miligrams per liter of blood.[2] Because a salicylate concentration of 300 miligrams per liter of blood can be toxic, the San Joaquin County District Attorney's office sought further information to determine whether criminal charges might be warranted. Beam was requested to calculate the number of baby aspirin which plaintiff's child would have had to ingest to produce such a high concentration of salicylate in the baby's bloodstream. He performed the calculations and communicated them to the district attorney's office, which used them as grounds for filing criminal murder and child neglect charges against plaintiff.
A preliminary hearing was held and Beam was subpoenaed by the People to testify as to the number of baby aspirin in the baby's bloodstream at the time of death. At the hearing, it was discovered Beam had erred in his calculations, overstating the number of aspirin ingested by the child. Thereafter, the criminal complaint was dismissed on the People's motion.
Plaintiff then filed this action, labeling the complaint as one for "professional negligence." Beam moved for summary judgment, asserting the privileges of Civil Code section 47, subdivisions 2 and 3.[3] The trial court held the communication subject to the qualified privilege of Civil Code section 47, subdivision 3, but not the absolute privilege of Civil Code section 47, subdivision 2. Plaintiff appeals.

*389 DISCUSSION
The privileges of Civil Code section 47, unlike evidentiary privileges which function by the exclusion of evidence (see Evid. Code, § 900 et seq.), operate as limitations upon liability. Section 47 was enacted in 1872 as part of a statutory scheme which defines defamation, in part, as a "false and unprivileged publication." (Italics added.) (Civ. Code, §§ 45 [libel] and 46 [slander].) The definition of "privileged publication" in section 47 provides, by negative implication, criteria for the tort. (See Dixon v. Allen (1886) 69 Cal. 527 [11 P. 179].) The assertion of the privilege as a defense is thus a direct challenge to liability. (See 1 Witkin, Summary of Cal. Law (6th ed. 1946) § 94, pp. 679-680; Snively v. Record Publishing Co. (1921) 185 Cal. 565, 574 [198 P. 1]; Reid v. Thomas (1929) 99 Cal. App. 719, 721 [279 P. 226].) This conceptual symmetry has been maintained to this day.
The defense of privilege was limited to defamation actions[4] until Albertson v. Raboff (1956) 46 Cal.2d 375 [295 P.2d 405]. There section 47, subdivision 2, was applied to defeat an action for disparagement of title arising out of a notice of lis pendens. The court analyzed the action as founded upon the republication of alleged falsehoods contained in pleadings already on file. It said: "The publication of the pleadings is unquestionably clothed with absolute privilege, and we have concluded that the republication thereof by recording a notice of lis pendens is similarly privileged." (Id., at p. 379.)
The court deftly made the transition from defamation to disparagement of title. Although recognizing that actions for disparagement of title are (in some ways) different from that of personal defamation, the court linked the disparagement of title action to the statutory privilege in Civil Code section 47 through the medium of the common law. The court said: "[S]ubstantially the same privileges are recognized in relation to both torts in the absence of statute. (See Rest., Torts, §§ 585 et seq., 635 et seq.; Prosser, Torts, 2d ed. 767.) Questions of privilege relating to both torts are now resolved in the light of section 47 of the *390 Civil Code." (46 Cal.2d at pp. 378-379.) The court thus conceptually linked the actionable wrong made the basis of the tort to the speech acts made the subject of the privilege in the same way that the privilege relates to speech acts in defamation actions.
The provisions contained in the Albertson citations to the Restatement and Prosser discuss a variety of torts, the common substance of which is an injurious falsehood,[5] which the common law makes privileged if published in judicial or other protected proceedings. In relying upon them, the court thereby extended the privileges of section 47, either directly or by analogy,[6] to torts predicated upon an injurious falsehood, however labeled, arising in or related to a privileged proceeding. It implicitly embraced the principle presently summarized in the Restatement Second of Torts, section 635, comment a: "The circumstances under which there is an absolute privilege to publish an injurious falsehood are in all respects the same as those under which there is an absolute privilege to publish matter that is personally defamatory. In other words, whenever there is a privilege to publish statements that are both false and defamatory, there must be a privilege to publish those that are false but not defamatory." (See also Rest.2d Torts, § 623 et seq.; Prosser, Torts (4th ed. 1971) § 128, p. 915 et seq., especially pp. 924-926; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 332, pp. 2597-2598.)
Subsequent cases have applied the privilege to defeat tort actions which, however labeled[7] and whatever the theory of liability,[8] are predicated *391 upon the publication in protected proceedings of an injurious falsehood. (Thornton v. Rhoden, supra, 245 Cal. App.2d 80, 94 [53 Cal. Rptr. 706, 23 A.L.R.3d 1152] [abuse of process arising out of the giving of notice that a deposition would be taken]; Kachig v. Boothe, supra, 22 Cal. App.3d 626 [99 Cal. Rptr. 393] [infliction of mental distress based on testimony given in a prior lawsuit]; Agostini v. Strycula, supra, 231 Cal. App.2d 804 [42 Cal. Rptr. 314] [inducing breach of an employment contract based on perjured testimony given in a civil service proceeding]; Lerette v. Dean Witter Organization, Inc. (1976) 60 Cal. App.3d 573 [131 Cal. Rptr. 592] [intentional infliction of emotional distress based on a defamatory letter sent in contemplation of a legal action]; Portman v. George McDonald Law Corp. (1979) 99 Cal. App.3d 988 [160 Cal. Rptr. 505] [negligent misrepresentation based upon a false letter intended to induce plaintiff to avoid staying enforcement of a judgment]; 117 Sales Corp. v. Olsen (1978) 80 Cal. App.3d 645 [145 Cal. Rptr. 778] [trade libel predicated upon the pleading in a small claims suit].) (Umansky v. Urquhart (1978) 84 Cal. App.3d 368 [148 Cal. Rptr. 547] [abuse of process predicated upon injurious falsehood in a pleading]; Younger v. Solomon, supra, 38 Cal. App.3d 289, 300-301 [113 Cal. Rptr. 113], and Twyford v. Twyford (1976) 63 Cal. App.3d 916, 924-926 [134 Cal. Rptr. 145] [abuse of process predicated upon statements contained in an interrogatory];[9]Pettitt v. Levy, supra, 28 Cal. App.3d 484 [104 Cal. Rptr. 650] [fraud, negligent misrepresentation, negligence and intentional infliction of emotional distress, predicated upon the submission of false documents to the City of Fresno in connection with quasi-judicial proceedings for a variance]; Scott v. McDonnell Douglas Corp. (1974) 37 Cal. App.3d 277 [112 Cal. Rptr. 609] [privileged letters relating to employee performance read at city council meeting formed basis for allegation of defamation, interference with contractual relationship and intentional infliction of emotional distress].)
*392 (2) But Civil Code section 47, subdivision 2, does not apply to every action in which a privileged communication may provide some element of the tort. Thus, "the fact that `a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case.'" (Brody v. Montalbano, supra, 87 Cal. App.3d 725, 736 [151 Cal. Rptr. 206], quoting from Albertson v. Raboff, supra, 46 Cal.2d at p. 382; see also Imig v. Ferrar (1977) 70 Cal. App.3d 48, 57 [138 Cal. Rptr. 540].)
We turn to examine whether plaintiff's theory of liability makes an injurious falsehood the subject of liability.
Plaintiff labels her claim of liability as professional negligence, relying principally upon Brousseau v. Jarrett (1977) 73 Cal. App.3d 864 [141 Cal. Rptr. 200]. She makes the negligent communication of an injurious falsehood, a negligent misrepresentation, the actionable wrong. She states: "[R]espondent is liable if his lack of ordinary care caused for[e]seeable injury to the economic interests of appellant. [¶] In the case at bar it is impossible that Mr. Beam would believe that the District Attorney would not rely on his tests in determining whether or not to issue a complaint against Ms. Block. [¶] It is inconceivable that he did not understand that his testimony at the preliminary examination might be relied upon by the magistrate in determining whether or not Ms. Block should be held to answer. In fact, once Mr. Beam had made his erroneous preliminary determination that the child had ingested a large number of aspirins immediately prior to her death, his purpose was to provide that information to the District Attorney and to the court so that they would rely thereon. There can be no question that the injuries sustained by Ms. Block were clearly foreseeable and in fact foreseen by Mr. Beam."
Plaintiff relies upon cases which place foreseeability as the "key component necessary to establish liability." (Weirum v. RKO General, Inc. (1975) 15 Cal.3d 40, 46 [123 Cal. Rptr. 468, 539 P.2d 36]; see also J'Aire Corp. v. Gregory (1979) 24 Cal.3d 799, 806 [157 Cal. Rptr. 407, 598 P.2d 60]; Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425 [131 Cal. Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) Plaintiff's theory of liability places Beam's communication of the report to the district attorney and, later, his testimony in the criminal proceeding, at the heart of the claim of liability. The publication of his report for purposes of the criminal proceeding is made the actionable wrong. *393 Whether the matter be characterized as the publication of a negligently prepared report[10] or the negligent publication of the report, plaintiff finds the duty upon which her theory of negligence relies in the foreseeable consequences of publication of the report in or related to the judicial proceeding. The claimed actionable wrong is a modern form of injurious falsehood.[11]
(1b) Having placed the tort within those made subject to a claim of privilege, we next determine that the injurious falsehood was privileged. Beam performed and communicated the calculations upon the request of the office of the district attorney in furtherance of its investigation whether there was probable cause to initiate criminal charges relating to the infant's death. "[W]hen the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by ... a possible party to the proceeding," the communication is privileged. (Rest.2d Torts, supra, § 588, com. e, at p. 251; see Izzi v. Rellas (1980) 104 Cal. App.3d 254 at p. 262 [163 Cal. Rptr. 689] ["the working definition of `judicial proceedings' ... include[s] proceedings which have the real potential for becoming a court concern."]; Ascherman v. Natanson (1972) 23 Cal. App.3d 861, 865 [100 Cal. Rptr. 656] ["It is ... well settled that the absolute privilege in both judicial and quasi-judicial proceedings extends to preliminary conversations and interviews between a prospective witness and an attorney if they are in some way related to or connected with a pending or contemplated *394 action. [Citations.]"]) And, notwithstanding that the privilege is most often asserted in civil disputes, the privilege is applicable to "proposed litigation, either civil or criminal." (Rest.2d Torts, supra, § 588, com. b, at p. 250.)
To allow plaintiff to proceed with this action would substantially defeat the purpose of a privilege designed "to afford litigants freedom of access to the courts ... and to promote the unfettered administration of justice even though as an incidental result it may [sometimes] provide ... immunity to the ... malignant slanderer [citations]." (Bradley v. Hartford Acc. & Indem. Co. (1973) 30 Cal. App.3d 818, 823 [106 Cal. Rptr. 718].) "[S]trong policy reasons exist to assure free and open channels of communication between citizens and public agencies and authorities charged with the responsibility of investigating wrongdoing [citation] without which protection would effectively close such important channels [citation]." (Tiedemann v. Superior Court (1978) 83 Cal. App.3d 918, 925-926 [148 Cal. Rptr. 242].) "The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it is necessary therefore that a full disclosure not be hampered by fear of private suits for defamation. The compulsory attendance of all witnesses in judicial proceedings makes the protection thus accorded all the more necessary." (Rest.2d Torts, supra, § 588 and com. a, at p. 250.)
Having concluded plaintiff's action is barred by Civil Code section 47, subdivision 2, we need not consider the remaining issues presented.
The judgment is affirmed.
Puglia, P.J., and Sparks, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied June 23, 1982.
NOTES
[1] Hereafter, all references to Beam include his employer, defendant Sacramento Clinical Labs, Inc.
[2] Salicylate is the metabolite of acetylsalicylic acid, commonly known as aspirin.
[3] "A privileged publication or broadcast is one made 

".... .... .... .... . .
"2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure; provided, that an allegation or averment contained in any pleading or affidavit filed in an action for divorce or an action prosecuted under Section 137 of this code made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication or broadcast as to the person making said allegation or averment within the meaning of this section unless such pleading be verified or affidavit sworn to, and be made without malice, by one having reasonable and probable cause for believing the truth of such allegation or averment and unless such allegation or averment be material and relevant to the issues in such action.
"3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." (Civ. Code, § 47, subds. 2 and 3.)
[4] See Lick v. Owen (1874) 47 Cal. 252; Dixon v. Allen, supra, 69 Cal.2d 527; Ball v. Rawles (1892) 93 Cal. 222, 236 [28 P. 937]; Leonard v. McPherson (1905) 146 Cal. 616, 620 [80 P. 1084]; Gosewisch v. Doran (1911) 161 Cal. 511, 513 [119 P. 656]; Earl v. Times Mirror Co. (1921) 185 Cal. 165, 172-173 [196 P. 57]; Snively v. Record Publishing Co., supra, 185 Cal. 565; Layne v. Kirby (1930) 208 Cal. 694, 696 [284 P. 441]; Clark v. McClurg (1938) 215 Cal. 279, 284-285 [4 P.2d 149, 9 P.2d 505, 81 A.L.R. 908]; Reid v. Thomas, supra, 99 Cal. App. 719; Gonsalves v. Asso. etc. Uniao Madeirense (1945) 70 Cal. App.2d 150, 151 [160 P.2d 595].
[5] "Injurious falsehood ... may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, or even to some element of his personal affairs, of a kind calculated to prevent others from dealing with him, or otherwise interfere with his relations with others to his disadvantage." (Prosser, Torts (4th ed. 1971) § 128, pp. 919-920.)
[6] The cryptic language "in the light of" can be read either (1) as reading section 47 into the common law, or (2) as reading the common law into section 47. Courts have read Albertson both ways. For an example of (1) see Agostini v. Strycula (1965) 231 Cal. App.2d 804, 808 [42 Cal. Rptr. 314]; Kachig v. Boothe (1971) 22 Cal. App.3d 626, 641 [99 Cal. Rptr. 393]. For examples of (2) see Younger v. Solomon (1974) 38 Cal. App.3d 289, 300 [113 Cal. Rptr. 113]; Earp v. Nobmann (1981) 122 Cal. App.3d 270, 281-282 [175 Cal. Rptr. 767].)
[7] The privilege attaches where the tort, however denominated, is one for defamation. (Thornton v. Rhoden (1966) 245 Cal. App.2d 80, 93-94 [53 Cal. Rptr. 706, 23 A.L.R.3d 1152] [abuse of process]; Brody v. Montalbano (1978) 87 Cal. App.3d 725, 732, fn. 2 [151 Cal. Rptr. 206] [conspiracy]; Pettitt v. Levy (1972) 28 Cal. App.3d 484, 491 [104 Cal. Rptr. 650] [conspiracy].)
[8] The cases do not discuss the conceptual link to Albertson. It has been suggested that actions subject to the privilege must be "based upon the defamatory nature of a communication...." (Italics added.) (Lerette v. Dean Witter Organization, Inc., supra, 60 Cal. App.3d 573, 573-579 [131 Cal. Rptr. 592]; Brody v. Montalbano, supra, 87 Cal. App.3d at p. 739.) Other cases apply Civil Code section 47 to common law torts by analogy. In Agostini v. Strycula, supra, 231 Cal. App.2d at page 808, the court said: "We recognize, of course, that appellant has not attempted to state a cause of action for defamation. Nevertheless, the statements complained of here were made by respondents in the course of an official proceeding, and privilege, analogous to that described in Civil Code section 47, subdivision 2, protects them from liability for a claimed intentional infliction of emotional distress as a result of such statements." (Italics added.) (See also Kachig v. Boothe, supra, 22 Cal. App.3d at p. 641.)
[9] The abuse of process cases apply the privilege when a judicial process is claimed to be abused by an injurious falsehood.
[10] Plaintiff seeks to escape the privilege by characterizing the action at oral argument as one arising out of the negligent conduct of Beam. We do not determine whether this formulation of the action escapes the privilege by limiting the actionable wrong to negligent conduct thus relegating the communication to the proximate cause element in the tort. The plaintiff here relies upon a traditional theory of negligence which requires the establishment of a duty arising out of the relationship between Beam and plaintiff, the breach of which proximately caused injury to plaintiff. Plaintiff has not explained the basis upon which such a duty arises and we decline to do so. (See Keene v. Wiggins (1977) 69 Cal. App.3d 308, 313 [138 Cal. Rptr. 3].) On any cognizable theory of duty, the negligent calculation formed the basis of Beam's communication and was privileged. (Cf. Pettitt v. Levy, supra, 28 Cal.3d at p. 489.)
[11] We do not address the merits of the claim. Plaintiff also advances an alternate theory of liability labeled as false imprisonment. (Pen. Code, § 236.) Although this theory focuses upon a consequence (imprisonment) flowing from the communication of the negligently prepared report, plaintiff grounds her theory of liability in foreseeability (i.e., in "the negligent conduct of a person whose negligence foreseeably results in the imprisonment of a plaintiff") and hence on the false and injurious communication which bridges the gap between the report and the consequence. It is but another way of framing the tort discussed above. "The salutary purpose of the privilege should not be frustrated by putting a new label on the complaint." (Thornton v. Rhoden, supra, 245 Cal. App.2d at p. 99.)