[L.A. No. 31541. Aug. 23, 1982.]

TERRY W. SLAUGHTER, Plaintiff and Appellant, v.
JAY W. FRIEDMAN et al., Defendants and Respondents.

COUNSEL

Michelle A. Welsh, Myron E. Etienne, Jr., and Noland, Hamerly, Etienne & Hoss for Plaintiff and Appellant.

Richard G. Flanagan, L. E. Schweiner, Ives, Kirwan & Dibble, Martin J. Kirwan and Herbert Jung for Defendants and Respondents.

OPINION

**RICHARDSON, J.**—The case involves the defenses to a libel action. The central issue is the application of section 592A of the Restatement Second of Torts, which creates an absolute privilege for "[o]ne who is required by law to publish defamatory matter . . . ." Noting that section 592A contains a privilege different from, and more extensive than, the absolute privileges of section 47 of the Civil Code, we conclude that the adoption of the Restatement rule is a matter more appropriately left to the Legislature. We further conclude that plaintiff has adequately al-

leged defendants' publication of defamatory matter unprotected by any other statutory privilege, and that the trial court erred when it sustained defendants' demurrers and dismissed plaintiff's complaint.

Plaintiff Terry W. Slaughter, an oral surgeon, appeals from a dismissal of his defamation action after entry of an order sustaining a demurrer without leave to amend. Defendants are: U. S. Administrators, Inc. (Administrators), a private insurance corporation which administers dental insurance plans for some of plaintiff's patients, and Jay Friedman, Administrator's dental director. In 1978, plaintiff submitted to defendants claims for certain dental services which he had rendered to eight patients. In denying each claim, defendants enclosed a letter from Friedman to some of the patients explaining the reasons for the denial. In some, but not all, of these letters, Friedman described certain of plaintiff's dental work as "unnecessary"; stated that Administrators would no longer process dental treatment claims from plaintiff because of "overcharging"; and announced that defendants would report plaintiff to the "California Dental Association" for disciplinary proceedings. Friedman further advised the patients to make no further payments to plaintiff pending resolution of the dispute.

Plaintiff sued defendants for libel and for interference with prospective economic advantage. Although defendants' demurrers were sustained on a variety of grounds, we consider here whether plaintiff has adequately alleged the publication of defamatory matter, and, if he has, whether such publication was privileged.

### 1. *Was the Publication Defamatory?*

Civil Code section 45 defines libel as "a false and unprivileged publication by writing ... which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, *or which has a tendency to injure him in his occupation.*" (Italics added.) ▪ We have said that libel includes "almost any language which, upon its face, has a natural tendency to injure a person's reputation. [Citations.]" (*Forsher* v. *Bugliosi* (1980) 26 Cal.3d 792, 803 [163 Cal.Rptr. 628, 608 P.2d 716].)

Plaintiff has alleged causes of action for both "libel per se" and "libel per quod." ▪ A statement is libelous "per se" when on its face the words of the statement are of such a character as to be actionable without a showing of special damage. A libel "per quod," on the other hand,

requires that the injurious character or effect be established by allegation and proof. These definitions are embodied in Civil Code section 45a: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he suffered special damage as a proximate result thereof." Plaintiff contends alternatively that defendants' communications either were libelous on their face, without the necessity of further explanation, or were libelous upon consideration of extrinsic facts showing inducement, innuendo and colloquium. Further, plaintiff purports to state separate causes of action based upon each of the various letters defendants sent to plaintiff's patients. ▮ Without analyzing the differing contents of each letter, we have no difficulty in concluding that those letters which accused plaintiff of charging excessive fees or performing unnecessary work reasonably may be deemed defamatory under section 45.

▮ We noted in *Forsher, supra,* in reviewing a trial court's order sustaining a demurrer without leave to amend, that our "inquiry is not to determine if the communications may have an innocent meaning but rather to determine if the communication reasonably carries with it a defamatory meaning. [Citations.]" (26 Cal.3d at p. 803.) ▮ So viewed, plaintiff's patients reasonably may have understood defendants' letters as accusing him of charging excessive fees or performing unnecessary dental work. Such accusations, if false and unprivileged, would be actionable tending, as they do, to injure plaintiff professionally. Indeed, plaintiff's complaint includes allegations that the patients involved either have not paid for plaintiff's services or have terminated their relationship with him because of the alleged defamation.

Defendants assert, however, that their letters contain mere statements of opinion, not fact. (See *Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600-601 [131 Cal.Rptr. 641, 552 P.2d 425].) Although accusations of "excessive" fees or "unnecessary" work when made by laymen might indeed constitute mere opinion, similar accusations by professional dental plan administrators carry a ring of authenticity and reasonably might be understood as being based on fact. As we recently generalized, "Where . . . the allegedly libelous remarks could have been understood by the average reader in either sense, the issue must be left to the jury's determination. [Citation.]" (*Good Government Group of Seal Beach, Inc. v. Superior Court* (1978) 22 Cal.3d 672, 682 [150 Cal.Rptr. 258, 586 P.2d 572].)

We conclude that plaintiff adequately alleged the publication of defamatory matter. Defendants appear to concede that if a defamatory publication was pleaded, plaintiff's action for interference with his economic relationships with his patients likewise would lie, based upon allegations of loss of former and prospective patients, unless defendants' publication was *justified* by reason of the privileged nature of that publication. (See *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 714 [104 Cal.Rptr. 96].)

We turn now to a consideration of the privilege issue.

2. *Was the Publication Privileged?*

Within the context of defamation, Civil Code section 47, in part, recognizes the following privileges:

(1) An *absolute* privilege for a publication or broadcast made "In the proper discharge of an official duty" (subd. 1).

(2) An *absolute* privilege for a publication made "In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by a mandate action] . . ." (subd. 2).

(3) A *qualified* privilege for a publication made "In a communication, without malice, to a person interested therein, (1) by one who is also interested, . . ." (subd. 3).

■    Relative to subdivision 1, although, as noted below, defendants were required by both federal and state law to provide an explanation of the reason for denying reimbursement of patients' claims, they were neither officials nor acting in an official capacity.    ■    As we recently explained in *Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 778 [180 Cal. Rptr. 657, 640 P.2d 793], "The absolute privilege [of subdivision 1] is extended to 'high-ranking state and federal officials, such as the President of the United States, the governor of any state or territory, cabinet officers of the United States and the corresponding officers of any state or territory' [citation] on the rationale that their ability to function would be impaired and society adversely affected if they were not absolutely free of the threat of suit by the defamed seeking recompense for injury. [Citations.] . . . . For the absolute privilege to attach, *the public*

*official* need only be properly discharging an official duty." (Italics added.) No case has yet applied the "official duty" privilege to *private* individuals. Similarly, we have long held that no absolute immunity attaches to a state officer who is *acting in a private capacity.* (*The Hale Company* v. *Lea* (1923) 191 Cal. 202, 206-207 [215 p. 900].)

██    With respect to subdivision 2 of section 47, the private processing of dental claims cannot be deemed part of any "legislative," "judicial," or "official" proceeding, or indeed any proceeding "authorized by law" and reviewable by writ of mandate. In *Hackethal* v. *Weissbein* (1979) 24 Cal.3d 55, 60 [154 Cal.Rptr. 423, 592 P.2d 1175, 9 A.L.R. 4th 791], we explained that use of the word "official" probably was intended to deny application of the absolute privilege to nongovernmental proceedings. Justice Tobriner's dissent urged that "quasi-judicial" proceedings conducted by a medical "peer review" authority likewise should be shielded by the privilege, because such proceedings were reviewable by administrative mandate. (24 Cal.3d at pp. 61-71.) Perhaps in response to the dissent, the Legislature added clause 4 to subdivision 2 of section 47, applying the privilege to proceedings authorized by law and reviewable by mandate. It is clear, however, that the private processing of dental claims does not fall within this newly extended category.

The "official proceeding" privilege has been interpreted broadly to protect communications to or from *governmental* officials which may precede the initiation of formal proceedings. (See *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753 [181 Cal.Rptr. 423] [statements to investigative officers]; *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 732-733 [151 Cal.Rptr. 206] [communications between parents and school board]; *Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918, 924-926 [148 Cal.Rptr. 242] [statements to I.R.S. agents investigating tax fraud].) None of these cases involves communications between private parties who are not acting in an official capacity, and we conclude that neither subdivisions 1 nor 2 of section 47 applies in such a case.

Subdivision 3 has a possible application to the case before us because defendants' letters pertained to a subject of mutual interest to plaintiff and his patients. Yet the privilege contained in that subdivision is a qualified one which is defeated by proof of malice. In the matter before us, plaintiff has alleged that defendants knew that their statements were

false, and that they acted in reckless disregard of the truth, being motivated by feelings of ill will toward plaintiff. According to plaintiff, defendants have had previous "quarrels with, rivalries involving and ill feeling toward Plaintiff arising out of the classifications and charges made by Plaintiff for services Plaintiff has rendered. The publications were made as part of a plan . . . to discredit and impugn the reputation and integrity of Plaintiff." For purposes of ruling upon defendants' demurrers, these allegations of malice are sufficient to defeat defendants' claim of a qualified privilege under subdivision 3. (See, e.g., *MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 552 [343 P.2d 36]; *Mullins v. Brando* (1970) 13 Cal.App.3d 409, 420 [91 Cal.Rptr. 796].)

The Legislature has supplemented the privileges contained in section 47 by granting special immunities from suit in certain cases involving communications evaluating professional medical care providers. (See Civ. Code, §§ 43.7, 43.8.) Neither section, however, is applicable here. Section 43.7 protects peer review committee members from liability for acts performed in reviewing the quality of medical or dental services, while section 43.8 protects private communications "to any hospital, hospital medical staff, professional society, medical or dental school, professional licensing board . . ., peer review committee, or underwriting committee . . ." evaluating practitioners of the healing arts. Neither provision extends protection to private persons communicating *to patients* with respect to the quality of the medical or dental care they have received. (In any event, as we observed in *Hackethal v. Weissbein, supra,* 24 Cal.3d 55, 61, the intent of § 43.8 seems to have been to provide only a *qualified* immunity, not previously available, for the communications specified in that section.)

Thus, our review of the existing statutory privileges and immunities indicates no intent to provide an absolute privilege for communications of the type herein presented.

Were the defendants entitled to the protection of the absolute privilege contained in section 592A of the Restatement Second of Torts which provides that "One who is required by law to publish defamatory matter is absolutely privileged to publish it"? It is uncontradicted that defendants, as administrators of the dental plans in question, were required by law to provide to patients a prompt, reasonable explanation of the specific basis for denial of the claim. (See 29 U.S.C. § 1133; Ins. Code, § 790.03, subd. (h)(13).)

Initially, we observe that the Legislature has not as yet adopted the section 592A privilege, and as previously noted, none of the existing statutory provisions is broad enough to include it. We have held that all questions regarding the applicable privileges in libel actions were resolved by the adoption of section 47 of the Civil Code. (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 378-379 [295 P.2d 405].) Accordingly, it would seem improper for us judicially to create an additional privilege, especially one which is considerably broader than the existing statutory privileges. Moreover, the grant of privileges in defense of a defamation action involves matters of public policy. (See *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393].) Deferring to legislative judgment, we decline to impose either our own or the Restatement's views of policy, especially in an area in which the Legislature has spoken so extensively.

Finally, we have reservations as to the wisdom of adopting an absolute privilege in cases such as the present one. Defendants were "required by law" only to inform dental patients of the basis for rejection of their claims; they were not required additionally to defame plaintiff with accusations regarding his dental practices. As expressed by the authors of the Restatement, "The chief present application of the Section [592A] is in the case of radio and television broadcasting stations, which are required by the Federal Communications Act to afford to political candidates equal opportunity to be heard, *without any power of censorship over the matter broadcast*. A station may, therefore, be *unable . . . to control in any way what [a candidate] says*. The station is therefore absolutely privileged as to the publication. Statutes to this effect have been enacted in a number of jurisdictions." (Italics added, Rest. 2d Torts, § 592A, com. a., pp. 257-258; see *Farmers Union* v. *WDAY*. (1959) 360 U.S. 525, 531 [3 L.Ed.2d 1407, 1412, 79 S.Ct. 1302].) The authors further note that section 592A applies "whenever the one who publishes the defamatory matter acts under legal compulsion in so doing." (*Id.*, com. b., p. 258; see also Prosser, Torts (4th ed. 1971) § 114(6) at p. 785 [rule would extend to "newspaper required to publish a legal notice"].)

Should the privilege, however, protect those, such as defendants, who do control the content of their communication? Arguably, such persons fall into a different category than radio or television stations or newspapers which may be required to publish or broadcast certain matters without the opportunity of exercising any editorial control over the substance of the communication.

Of the handful of cases which appear to adopt the Restatement rule or a similar privilege, none of them acknowledges this distinction. (See, e.g., *Becker* v. *Philco Corporation* (4th Cir. 1967) 372 F.2d 771, 774-775 [government contractor required by law to report loss of classified information]; *Johnson* v. *Dirkswager* (Minn. 1982) 315 N.W.2d 215, 223 [compelled disclosure of reasons for government employee's discharge].) Indeed, in a recent case essentially identical to the present case, a Texas court *rejected* the contention that a group medical insurer's defamatory statements to patients regarding plaintiff-anesthesiologists' excessive charges for services were shielded by an absolute privilege merely because those statements were required by federal law. (*Moore & Associates* v. *Metropolitan Life Ins.* (Tex.Civ.App. 1980) 604 S.W.2d 487, 489-490.) The *Moore* court stressed that "To extend absolute privilege to occasions such as those here exhibited would not serve the same public purpose [i.e., promoting full disclosure between citizens and governmental agencies] as is served by the general rule regarding privilege, even though the reports in question may have been required by law. *Furthermore, no safeguard would exist to prevent abuse.* We conclude that a statement which the law requires one private party to make to another is not absolutely privileged but is qualifiedly privileged." (P. 490, italics added.)

We agree with *Moore*. The qualified privilege under Civil Code section 47, subdivision 3, is sufficient to protect persons in defendants' position who, though required by law to communicate with others, nonetheless maintain control over the contents of those communications. In the present case, plaintiff has alleged that defendants acted maliciously. Assuming, for pleading purposes, that this allegation is true, no discernible or compelling reason exists for denying him recovery for defendants' malicious libel.

The judgment is reversed.

Mosk, J., Newman, J., Kaus, J., and Reynoso, J., concurred.

**BROUSSARD, J.,**—Concurring and Dissenting.—I concur in the majority opinion insofar as it holds that plaintiff adequately alleged the publication of defamatory matter, that the statutory absolute privileges are inapplicable to the instant case, that the absolute privilege of section 592A of the Restatement Second of Torts is inapplicable to the instant case, that the utterance in the instant case is not absolutely privi-

leged, and that the trial court erred in sustaining the demurrers and dismissing the complaint.

However, I cannot agree with the view expressed in the majority opinion that all privileges in libel actions were resolved by the adoption of section 47 of the Civil Code, that adoption of the privilege in section 592A is for the Legislature and not for the courts, and that we may not in an appropriate case adopt the absolute privilege set forth in that section.

Traditionally, the law of defamation, and particularly the existence and definition of the privileges applicable thereto, has developed in the crucible of the common law. While the Legislature, of course, may add to or limit common law doctrine, the Legislature has limited itself in large part to codifying doctrine originally developed through our common law heritage by the courts. The balancing of reputation, free speech, the necessity of making available to the public the basis of governmental action, and permitting the free exchange of ethical and moralistic considerations has long concerned the courts as well as the Legislature.

By concluding that section 47 of the Civil Code and other statutory provisions define the reach of privilege in California, the majority determine that the courts need labor no more in this vineyard. The Legislature's enactment of absolute privilege provisions in section 47 must be read, we are told, not only as an attempt to codify common law rules developed by the court with minor modifications but also apparently as a comprehensive attempt to define the law of privilege and a direction to the courts to cease and desist from examining new problems in the light of our modern society.

I do not read the enactment in 1872 of provisions now found in section 47, the legislative modifications of those provisions over the years, or the most recent amendments as reflecting a legislative intent to repudiate the traditional judicial function. While courts must follow legislative direction, we should not assume that the Legislature intended to abrogate the traditional court function in the absence of clear legislative expression.

Rather, the effect of legislative codification in section 47 of judicially created privileges is properly recognized in *Saroyan v. Burkett* (1962)

57 Cal.2d 706 [21 Cal.Rptr. 557, 371 P.2d 293], where the court first recognized the absolute privilege of executive officials. "It thus appears that the problem of the extent, if any, to which executive officials have an absolute privilege cannot be satisfactorily resolved on the basis of the statutory language, the historical background of the subdivision or the California cases cited above, and a solution must be found by considering the treatment of the subject in the law generally. *This approach is particularly appropriate in regard to the statute before us because it was evidently intended as a codification of the general principles developed by the courts.*

"An absolute privilege for executive officials with respect to defamation was first recognized more than 20 years after the enactment of section 47. In *Spalding* v. *Vilas* (1896) 161 U.S. 483, 493, 498-499 [16 S.Ct. 631, 40 L.Ed. 780], the Postmaster General of the United States was held to be absolutely privileged in regard to statements made to persons having business with his department. It has also been held that a cabinet officer is absolutely privileged with respect to statements to the press if they are connected with his official duties. (*Glass* v. *Ickes*, 117 F.2d 273, 281 [132 A.L.R. 1328, 73 App. D.C. 3]; *Mellon* v. *Brewer*, 18 F.2d 168, 171-172 [57 App. D.C. 126].) Similarly, state decisions have recognized an absolute privilege as to statements made to the general public by a Governor and an Attorney General. (*Ryan* v. *Wilson*, 231 Iowa 33 [300 N.W. 707, 715-716]; *Matson* v. *Margiotti*, 371 Pa. 188 [88 A.2d 892, 899-900].)

"The rule as it has developed with respect to both federal and state officials of high rank is set forth in section 591 of the Restatement of Torts, which reads: 'The President of the United States and the Governor of any State or Territory thereof, cabinet officers of the United States and the corresponding officers of any State or Territory thereof are absolutely privileged to publish false and defamatory matter of another in the exercise of an executive function, if the matter has some relation to the executive proceeding in which the officer is acting.'

"We are in accord with the rule granting an absolute privilege to state officials corresponding in rank to federal cabinet members." (57 Cal.2d at pp. 709-710 (italics added); see *Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 778 et seq. [180 Cal.Rptr. 657, 640 P.2d 793]; *Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 412-413 [134 Cal.Rptr. 402, 556 P.2d 764].)

Given the traditional experience of court adoption of privilege in defamation cases and judicial definition, followed by legislative codification, today's decision determining that legislative enumeration of privileges is exhaustive must be viewed as a radical departure from the long-settled relationship between common law evolution and legislative determination. I find nothing in the current version of section 47 to warrant the departure.

I also find nothing in section 47 which should preclude adoption of section 592A of the Restatement Second of Torts in an appropriate case. When we are confronted with a case where, compelled by the equal time doctrine, the television station has broadcast a candidate's defamatory statement, we should be able to determine whether section 592A establishing an absolute privilege is applicable for the television station, whether a qualified privilege is applicable, or whether there is strict liability. In view of the long common law tradition, legislative silence should not permit abdication of the judicial responsibility to determine these questions. Yet, that is the result following from the majority opinion.

The petition of respondent Friedman for a rehearing was denied September 30, 1982.