[No. B016289. Second Dist., Div. Three. Mar. 27, 1987.]

EDWARD D. CARDEN, Plaintiff and Appellant, v.
STEVEN N. GETZOFF et al., Defendants and Respondents.

COUNSEL

Maginnis & Maginnis, Jeannette Torrel Maginnis and J. Patrick Maginnis for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, Steven R. Parminter, Lisa D. Norlander and Patrick M. Kelly for Defendants and Respondents.

---

**OPINION**

LUI, P. J.—Plaintiff Edward D. Carden, M.D., appeals from the dismissal of his second amended complaint without leave to amend.

Appellant's second amended complaint alleged abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress, all related to allegations that respondent[1] had manufactured false evidence as an expert accounting witness for appellant's former wife in a dissolution action.[2]

### The Second Amended Complaint

Appellant, an anesthesiologist, was involved in dissolution proceedings with his wife. Respondent prepared a medical practice valuation of appellant's anesthesiology practice to be used in the negotiation of a settlement agreement. Respondent purported to have examined appellant's anesthesiology practice to determine the goodwill therein and to have compared the evaluation of the goodwill found in appellant's practice to that of "other similar practices" that had also been examined by respondent. Appellant alleges that those representations were false and that no evaluation was made of appellant's anesthesiology practice and no comparison was made. If respondent had made such evaluations and comparisons, "they would have determined that no goodwill existed in the practice of [appellant], since a comparison with 'other similar practices' would have also shown that no such goodwill existed in the similar practices."

---

[1]Stephen N. Getzoff and Stephen N. Getzoff Accountancy Corporation are both named as defendants. For ease of reference, we shall use the singular "respondent" in discussing the prevailing parties below.

[2]Basically the same factual allegations, which will be set forth in greater detail below, also formed the basis for appellant's original complaint for fraud and deceit, accounting malpractice, intentional and negligent infliction of emotional distress and his first amended complaint for fraud and deceit, accounting malpractice, and negligent and intentional infliction of emotional distress. Demurrers to the first two complaints were sustained with leave to amend, respondent having raised the privilege of Civil Code section 47 and other grounds in support of the demurrers. The first two complaints emphasized the allegedly false statements made by respondent when testifying in the dissolution action. The second amended complaint relied on both the testimony in court and on respondent's preparation of the medical practice evaluation.

Negotiations for settlement were allegedly stymied based on the evaluation of goodwill that was "far in excess of any goodwill in actuality." Therefore, appellant was forced to go to trial. At trial, respondent allegedly misused the process of the court when respondent testified that "he had made an appraisal of [appellant's] anesthesiology practice based upon an examination of the practice and a comparison of the evaluation of the goodwill of the practice to that of three other comparable anesthesiology medical practices."

The second amended complaint alleges that those three purported practitioners were not anesthesiologists with comparable practices and in fact did not even exist as anesthesiologists in the State of California. Appellant alleges that no goodwill existed in his practice since he was on a staff as part of a rotation group at Centinela Medical Center, had no patients of his own, and thus no goodwill. Appellant alleges that he was forced to settle his dissolution action and to pay his wife $50,000 as her community property portion of the goodwill of his practice, when no value existed for that practice, because of respondent's wrongful acts in testifying falsely and misusing the processes of the court.

The second amended complaint asserted theories of abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress. Appellant sought compensatory and punitive damages.

*The Demurrer to the Second Amended Complaint*

In respondent's demurrer to appellant's second amended complaint, respondent argues regarding the first cause of action that there was no substantive abuse of process in the preparation of the documentary evidence and that, in any event, the preparation of documentary evidence and the giving of testimony are protected by the absolute privilege of California Civil Code section 47, subdivision 2.[3]

Respondent demurred to the second and third causes of action in the second amended complaint, alleging that appellant had pled facts substan-

---

[3]Subdivision 2 of Civil Code section 47 provides: "A privileged publication or broadcast is one made— . . . [¶] 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law . . .; provided, that an allegation or averment contained in any pleading or affidavit filed in an action for divorce or an action prosecuted under Section 137 of this code made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication or broadcast as to the person making said allegation or averment within the meaning of this section unless such pleading be verified or affidavit sworn to, and be made without malice, by one having reasonable and probable cause for believing the truth of such allegation or averment and unless such allegation or averment be material and relevant to the issues in such action."

Unless otherwise indicated, all further statutory references are to the Civil Code.

tially similar to those pleaded in the first amended complaint to which respondent's demurrer had been sustained and, therefore, those causes of action are to be considered a sham. The parties filed additional opposition to the demurrer and a reply thereto.

A minute order dated April 24, 1985, reflects that the trial court sustained the demurrer without leave to amend "on [the] grounds stated" and dismissed as to the demurring defendants. Appellant filed a motion for reconsideration, which included exhibits of discovery sought following the sustaining of the demurrer in which respondent asserted his Fifth Amendment privileges and a reporter's transcript of respondent's testimony in the dissolution action.[4]

The trial court denied the motion for reconsideration as untimely, on its merits, and because the "evidence" could have been presented at the initial hearing. The evidence appellant presented was stricken from the record. An order of dismissal followed, and this appeal was taken therefrom.

CONTENTIONS ON APPEAL

Appellant's contentions on appeal may be summarized as follows:

1. The privilege of section 47, subdivision 2, should not operate as a limitation upon respondent's liability since the publication was not made in good faith nor in serious contemplation of litigation.

2. Respondent owed a duty to appellant to act honestly and in good faith.

3. A trend in California to recognize new torts where the process of the courts are being subverted allows this court to formulate a new tort which can be analogized to the spoliation of evidence tort recently recognized in this state.

4. The facts of this case can also be analogized to the tort of misuse of process.

5. Appellant's causes of action for punitive damages and for intentional and negligent infliction of emotional distress are related with the other causes of action; if they are valid, then these causes of action are valid if pled correctly.

---

[4]The reporter's transcript of the dissolution proceedings demonstrates that counsel suspected during respondent's testimony at the dissolution hearing, apparently for the first time, that the anesthesiologists respondent had allegedly used for comparable practices might not exist.

Respondent contends that the absolute privilege of section 47, subdivision 2, precludes causes of action for fraud, professional negligence, abuse of process, and intentional or negligent infliction of emotional distress. In addition, even assuming no bar by privilege, none of the three complaints states facts sufficient to state causes of action in that:

1. Appellant has failed to allege facts sufficient to show that respondent owed any duty of care to appellant;

2. Appellant cannot state a cause of action for intentional infliction of emotional distress since the facts alleged do not produce extreme outrage; and

3. Appellant cannot state a cause of action for negligent infliction of emotional distress where there is no duty.

Respondent argues that appellant's prosecution of this frivolous appeal entitles him to sanctions.

DISCUSSION

*Standard of Review*

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citations.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

1. *The Trial Court Did Not Err in Finding that the Privilege of Section 47 Bars the Complaint*

Section 47 provides in relevant part that: "A privileged publication or broadcast is one made ... [¶] 2. In any ... (2) judicial proceeding, or (3) in any other official proceeding authorized by law ...."

■ "[A]lthough the statutory privilege accorded to statements made in judicial proceedings appears in the code in the chapter on defamation, it applies to virtually all other causes of action, with the exception of an action for malicious prosecution. (*Pettit* v. *Levy* (1972) 28 Cal.App.3d 484, 489 ....)" (*Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417]; *Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 778 [180 Cal.Rptr. 657, 640 P.2d 793].) The decisions in *Fuhrman* v. *California Satellite Systems* (1986) 179 Cal.App.3d 408, 420 [225 Cal.Rptr. 140], and *Rosenthal* v. *Irell & Manella* (1982) 135 Cal.App.3d 121, 125 [185 Cal.Rptr. 92], make it clear that the privilege "has been applied to defeat tort actions based on publications in protected proceedings but grounded on different theories of liability" (*Rosenthal, supra,* 135 Cal.App.3d at p. 125), listing several theories of liability, attempted but rejected, including abuse of process,[5] intentional infliction of mental distress inducing breach of contracts, invasion of privacy, fraud, interference with prospective economic advantage, negligent misrepresentation, and negligence. (See also *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 390-391 [182 Cal.Rptr. 438].)[6]

While courts have argued about the scope of the privilege (see *Barbary Coast Furniture Co.* v. *Sjolie* (1985) 167 Cal.App.3d 319, 332-335 [213 Cal.Rptr. 168]), it is clear that "the privilege has been applied to publications which were private communications between parties and which communications were related not only to actual but potential court actions." (*Rosenthal, supra,* 135 Cal.App.3d at p. 126.)

■ Unless some other exception to the privilege applies, it seems clear to us that the "publications" made both in the document prepared by respondent and in respondent's testimony at the dissolution proceedings are covered by the absolute privilege of section 47, subdivision 2. The dissolution action was pending, and respondent had been hired as an expert witness for appellant's wife. This situation is clearly part of a judicial proceeding, unlike the private processing of dental claims found not to be covered by the privilege in *Slaughter* v. *Friedman* (1982) 32 Cal.3d 149, 156 [185 Cal.Rptr. 244, 649 P.2d 886]. The allegations in appellant's second amended complaint are also unlike *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30

---

[5]The question of whether the rationale extending the protection of section 47, subdivision 2, to actions for abuse of process is convincing was recently raised but not decided by our Supreme Court. (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157 [232 Cal.Rptr. 567, 728 P.2d 1202].)

[6]In *Block,* a toxicologist who had negligently calculated the number of aspirin in a deceased baby's bloodstream, was sued by the infant's mother, who had been charged with murder and child neglect because of the mistaken calculations. The criminal complaint was dismissed when the miscalculations were discovered at the preliminary hearing. The Court of Appeal decided the mother's action was barred by section 47, subdivision 2.

Cal.App.3d 818, 826 [106 Cal.Rptr. 718], where the privilege was erroneously claimed by people who were not litigants, witnesses, or attorneys, the "designated persons . . . to whom the absolute privilege has been extended by law," and the defamatory statements were allegedly communicated to "strangers . . . who had no interest in the action." *Fuhrman* v. *California Satellite Systems, supra,* 179 Cal.App.3d 408, can also be distinguished since the judicial proceeding herein, the dissolution, was " '*contemplated in good faith and under serious consideration.*' " (*Id.,* at p. 421, italics in original.)

Appellant's attempt to analogize to the recently recognized tort of intentional spoliation of evidence is also misplaced. In *Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491, 494 [198 Cal.Rptr. 829], this court recognized such a tort in a case where it was alleged that a van dealer to which a vehicle was towed for repairs immediately after an accident had agreed to maintain certain automotive parts as physical evidence pending further investigation but destroyed, lost, or transferred said physical evidence, "making it impossible for the . . . experts to inspect and test those parts in order to pinpoint the cause of the failure of the wheel assembly on the van." This court, relying in part on the Supreme Court opinion in *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137], which indicates that a negligence cause of action could be stated for spoliation of evidence, recognized an intentional tort cause of action for the behavior alleged. Section 47 was not considered in *Smith* v. *Superior Court.* And, as broad as the interpretation of section 47 may have grown, it still does concern "publications," not present in the destruction of evidence but indeed germane to the preparation of documentary evidence and testimony based on such documentation.

Neither are we persuaded by appellant's attempt to analogize the instant action to cases involving abuse of process. For example, the publication in *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 293-294 [113 Cal.Rptr. 113], was a statement in an interrogatory that a complaint had been filed against an attorney with the State Bar Association charging him with ambulance chasing. That attorney then filed cross-complaints for abuse of process. The Court of Appeal agreed that the statement in the interrogatory regarding the claim to the State Bar Association should survive a motion for summary judgment and that the interrogatory, to which a copy of the letter of complaint was attached, was not protected by section 47 because it did not comply with the test set forth in *Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d at pages 824-825: " '(1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law.' " (*Younger* v. *Solomon, supra,* 38 Cal.App.3d at p. 301.) The court held that the publication in the *Youger* case had "no logical relation or connection" to the action in which it was published. (*Ibid.*) In

the case at bench, on the other hand, the accountant's statements were directly related to the dissolution action and the determination of the good-will, if any, of appellant's practice.

Our Supreme Court in the recent case of *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc., supra,* 42 Cal.3d 1157, questioned the rationale of cases that use section 47, subdivision 2, to bar abuse of process suits (*id.,* at pp. 1164-1167) but did not decide that issue. Instead, the court found that section 47, subdivision 2, does not bar the evidentiary use of statements made during negotiation sessions to determine if defendant in an abuse of process action acted for an improper "ulterior" motive; it further held that the act of improperly instituting an action may constitute malicious prosecution, if other elements are established, but does not state a cause of action for abuse of process. The court emphasized "protecting the right to seek judicial relief" (*id.,* at p. 1170) and the "appropriate accommo-dation [in malicious prosecution actions] between the freedom of an indi-vidual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation." (*Id.,* at p. 1169.)

With similar considerations of public policy in mind, our Supreme Court long ago ruled that injurious perjury and suborning such perjury cannot be the basis of a civil action. (*Taylor* v. *Bidwell* (1884) 65 Cal. 489, 490 [4 P. 491].) As the court in *Taylor* observed, "however just and reasonable it may appear, . . . that a man who has by perjury injured another, should be answer-able, yet, on nearer inspection, when the mischiefs resulting from upholding that proposition are considered, the conclusion must be that it would be dangerous in the extreme to sustain the action." (*Ibid.*) However phrased in legal theories, the action before us is essentially one for damages from respon-dent's alleged perjury. The explanation in *Taylor* v. *Bidwell* provides the public policy reasons for barring the case at bench. In the absence of a further holding by our Supreme Court, we are bound by *Taylor* v. *Bidwell.* (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

We in no way condone the alleged perjury. If the allegations in the complaint are true, respondent's conduct is indeed outrageous. ■ However, when there is a good faith intention to bring a suit, even malicious publications "are protected as part of the price paid for affording litigants the utmost freedom of access to the courts." (*Fuhrman* v. *California Satellite Systems, supra,* 179 Cal.App.3d at p. 422, fn. 5; *Izzi* v. *Rellas* (1980) 104 Cal.App.3d 254, 264 [163 Cal.Rptr. 689].) Otherwise, adverse witnesses would always be fearful of subsequent civil suits and would be extremely hesitant or unwilling to testify. Appellant's potential remedies are to assist in the prosecution of criminal charges; to report any allegations of dereliction

to the Board of Accountancy; and to attempt to litigate any claims he might have against his trial attorney.

 In light of our determination that section 47, subdivision 2, applies to and precludes the causes of action alleged by appellant, we need not consider respondent's other contentions that, assuming section 47 does not apply, the demurrer should be sustained in any event since the complaint does not otherwise state a cause of action.[7]

### 2. We Decline to Award Sanctions to Respondent

Respondent contends that appellant has prosecuted a frivolous appeal and that respondent is therefore entitled to sanctions. Although we have found appellant's argument to be without merit, we do not find them to be frivolous, and we decline to award sanctions.

The judgment (order of dismissal) is affirmed.

Hom, J.,* concurred.

**DANIELSON, J.**—I fully concur in the above opinion, but submit this additional opinion in order to express the following thoughts, which need to be expressed.

If the allegations in the complaint are true the respondent manufactured false evidence which was used to compel the payment of an excessive settlement by the appellant in the underlying dissolution action. The false evidence was used first during the settlement phase of the action, and again during the trial.

If the allegations are true the respondent testified that "he had made an appraisal of [appellant's] anesthesiology practice based upon an examination of the practice and a comparison of the evaluation of the goodwill of the practice to that of three other comparable anesthesiology medical practices."

The respondent could not have conducted such an examination and comparison because, in fact, (1) the three other purported anesthesiologists with purportedly comparable practices did not even exist in the State of Cali-

---

[7]Neither do we consider appellant's argument regarding an accountant's duty of care. Whatever duty *International Mortgage Co.* v. *John P. Butler Accountancy Corp.* (1986) 177 Cal.App.3d 806 [233 Cal.Rptr. 218], places on an accountant for accurate audited financial statements, we need not decide its applicability to the case before us since we conclude that the privilege set forth in section 47 precludes appellant's actions against respondent.

*Assigned by the Chairperson of the Judicial Council.

fornia, and (2) appellant's practice had no goodwill since he practiced as a staff member in a rotation group and had no patients of his own.

Our opinion in this case, in which I join under the compulsion of stare decisis and the decision in *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], is based upon the holding of our Supreme Court in the case of *Taylor* v. *Bidwell* (1884) 65 Cal. 489, 490 [4 P. 491] (see page 915, *ante*). *Taylor* v. *Bidwell* should be re-examined by our Supreme Court, or Civil Code section 47, subdivision 2 should be reviewed by our Legislature, the policy-making branch of our government. *Taylor* holds that perjury, and the suborning of perjury, in a criminal proceeding do not constitute a cause of action for damages by the person injured, and that principle has been carried forward to countenance the same malconduct in civil proceedings.

*Taylor* predicates its holding on its statement that "however just and reasonable it may appear, upon the first view of the proposition, that a man who has by perjury injured another, should be answerable, yet, on a nearer inspection, when the mischiefs resulting from upholding that proposition are considered, the conclusion must be that it would be dangerous in the extreme to sustain the action." (*Id.,* at p. 490.)

*Taylor* does not identify the dread "mischiefs" and dangers which would result from holding a perjuring witness or his suborner accountable in a civil action. Just what they are is limited only by the unlimited imaginations of those with less faith than I that our judicial system can survive the burdens of compelling truth in testimony.

To leave matters where they are is to bar a civil action for damages by one who has been injured by perjury and false evidence. Such evidence is a fraud upon the courts, the litigants and the People of our state. It subverts the administration of justice. It should not be countenanced.

A petition for a rehearing was denied April 20, 1987, and appellant's petition for review by the Supreme Court was denied June 17, 1987.