[No. B141290. Second Dist., Div. One. Jan. 30, 2001.]

VICTOR M. RODAS, Plaintiff and Appellant, v.
DAVID SPIEGEL et al., Defendants and Respondents.

514

## Counsel

Kusion & Campana and David E. Campana for Plaintiff and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Margaret A. Rodda, Assistant Attorney General, Richard J. Rojo and Jung D. Shin, Deputy Attorneys General, for Defendants and Respondents.

## Opinion

## SPENCER, P. J.—

### Introduction

Plaintiff Victor M. Rodas, doing business as Victor Rodas Wood Floors, appeals from an order dismissing his complaint as to defendants David Spiegel and Spiegel Certified Restoration. We affirm the order.

STATEMENT OF FACTS[1]

In October 1994, plaintiff installed hardwood flooring in Laura Keddington's (Keddington) home. On December 6, 1994, Keddington wrote a letter to the Contractors' State License Board, complaining about plaintiff's workmanship. Rosalind Yates (Yates) investigated Keddington's complaint on behalf of the board.

On January 4, 1995, Keddington filed a claim with Farmers Insurance Company, her insurer, for water damage resulting from a roof leak during a storm. After inspection of the Keddington home, the insurer paid Keddington for damage to the second floor but not for damage to the first floor.

In 1997, Farmers Insurance Company hired defendant Spiegel to evaluate Keddington's claim regarding the condition of the wood floor. Although the insurer knew of the water damage to Keddington's home, Farmers Insurance Company concealed this information from defendant Spiegel, as did Keddington. After inspecting the floors in August 1997, defendant Spiegel reported to the insurer that the condition of the flooring was related to a lack of expansion space at the walls during installation, combined with an insufficient acclimation period before the floor was sanded and finished. Defendant Spiegel estimated the cost to repair the condition, as he recommended, was $7,853.88, primarily removing the baseboards, sanding the floor, and applying the finish. Two months later, at the behest of Farmers Insurance Company's adjuster, he prepared a second estimate of $43,758.87. This estimate included moving of all furniture, demolition of the existing floor, and installation of a new floor, as Keddington desired.

At Keddington's request, defendant Spiegel returned to inspect the floors on April 2, 1999. He wrote a report, which was transmitted to the Contractors' State License Board. He reiterated his earlier opinion as to the cause of damage and stated his method of correction. He estimated the cost of correction to be $7,838.

Later in 1999, defendant Spiegel testified at the board's citation hearing that the wood floors were damaged as a result of plaintiff's faulty workmanship. The board dismissed the counts concerned with faulty workmanship but sustained a count concerned with the manner in which Keddington's contract had been drawn. At some point in 1999, plaintiff learned that

[1]Inasmuch as this appeal follows the sustaining of a demurrer, we draw our facts from those pleaded in the complaint (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204]; *Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752]) and those of which we may take judicial notice (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [6 Cal.Rptr.2d 151]).

Keddington's home suffered water damage approximately one month after he installed the wood floors.

DISCUSSION

■ A demurrer tests the sufficiency of a complaint by raising questions of law. (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 20 [223 Cal.Rptr. 806].) In determining the merits of a demurrer, all material facts pleaded in the complaint and those that arise by reasonable implication, but not conclusions of fact or law, are deemed admitted by the demurring party. (*Moore v. Conliffe, supra,* 7 Cal.4th at p. 638; *Interinsurance Exchange v. Narula, supra,* 33 Cal.App.4th at p. 1143.) The complaint must be construed liberally by drawing reasonable inferences from the facts pleaded. (*Flynn v. Higham* (1983) 149 Cal.App.3d 677, 679 [197 Cal.Rptr. 145].)

In addition to the facts actually pleaded, the court considers facts of which it may or must take judicial notice. (*Cantu v. Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 877.) Moreover, a party may not avoid demurrer by omitting facts pleaded in the original complaint "or by suppressing facts which prove the pleaded facts false. [Citation.]" (*Ibid.*) Inasmuch as " ' "[t]he principle is that of truthful pleading," ' " the court also will consider such facts. (*Id.* at pp. 877-878, italics omitted.)

■ On appeal, we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. (*Lee v. Bank of America* (1990) 218 Cal.App.3d 914, 919 [267 Cal.Rptr. 387]; *Mayflower Ins. Co. v. Pellegrino* (1989) 212 Cal.App.3d 1326, 1332 [261 Cal.Rptr. 224].) This court is not bound by the trial court's construction of the complaint, but must make its own independent interpretation. (*Rader Co. v. Stone, supra,* 178 Cal.App.3d at p. 20.)

Plaintiff's first amended complaint alleges four causes of action. The first three allege fraud, intentional and negligent interference with contract, and intentional interference with business relations. The fourth alleges malicious prosecution based upon the proceeding before the Contractors' State License Board.

*Immunity*

■ Civil Code section 47, subdivision (b), provides that "[a] privileged publication or broadcast is one made . . . [¶] . . . [¶] . . . [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other

proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ." The report defendant Spiegel prepared for Keddington to forward to the board falls in the fourth category. Defendant Spiegel's hearing testimony falls in the third. The immunity conferred by subdivision (b) of Civil Code section 47 extends to all tort claims other than malicious prosecution. (*Harris v. King* (1998) 60 Cal.App.4th 1185, 1188 [70 Cal.Rptr.2d 790]; *Carden v. Getzoff* (1987) 190 Cal.App.3d 907, 913 [235 Cal.Rptr. 698].) Defendant Spiegel's second report and hearing testimony therefore are absolutely privileged pursuant to Civil Code section 47, subdivision (b). (*Carden, supra*, at p. 913; cf. *Harris, supra*, at p. 1188.) Indeed, plaintiff concedes the latter point.

As noted above, we consider facts of which we must or may take judicial notice, as well as those plaintiff has pleaded. (*Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 877.) ▌ We may take judicial notice of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." (Evid. Code, § 452, subd. (c).) Official acts include records, reports and orders of administrative agencies. (*Hogen v. Valley Hospital* (1983) 147 Cal.App.3d 119, 125 [195 Cal.Rptr. 5]; *McGlothlen v. Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1015 [140 Cal.Rptr. 168]; *Agostini v. Strycula* (1965) 231 Cal.App.2d 804, 806 [42 Cal.Rptr. 314].) ▌ The decision and order of the Registrar of Contractors, Contractors' State License Board, Department of Consumer Affairs, *In the Matter of the Citation Against Rodas Victor Floors* (OAH No. L-1998080075, July 26, 1999) therefore qualifies as an official act of which we may, and shall, take judicial notice. We also may, and shall, take judicial notice of admissions in plaintiff's opposition to the demurrer. (Evid. Code, § 452, subd. (d).)

Farmers Insurance Company hired defendant Spiegel to inspect the Keddington floor in 1997 to determine whether an incident that would be covered by her policy caused the condition of her hardwood floor. After inspecting the floor, defendant Spiegel made a report to the insurance company, in which he concluded the condition of the flooring was related to a lack of expansion spacing at the walls during installation, combined with an insufficient acclimation period before the floor was sanded and finished. Defendant Spiegel estimated the cost to repair the condition was $7,853.88, primarily removing the baseboards, sanding the floor, and applying the finish. Two months later, *at the behest of Farmers Insurance Company's adjuster*, he prepared a second estimate of $43,758.87. This estimate included moving of all furniture, demolition of the existing floor, and installation of a new floor.

Defendant Spiegel returned on April 2, 1999, at Keddington's request. He wrote a report for transmittal to the board. He described the cupping he had found, reiterated his opinion as to the cause and stated his method of correction. He estimated the cost of correction to be $7,838.00. In short, defendant Spiegel prepared his reports and estimates at the behest of Farmers Insurance Company and Keddington, both of whom were interested parties.

Civil Code section 47, subdivision (c) provides that "[a] privileged publication or broadcast is one made[] [¶] . . . [¶] . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Defendant Spiegel falls in the third category. Two interested parties—Keddington and Farmers Insurance Company—requested that he prepare reports, one of which was forwarded to the board. They also requested that he prepare repair and replacement estimates, which he did.

Plaintiff argues that defendant Spiegel nonetheless is not immune from liability under the provisions of Civil Code section 47, subdivision (c), in that he has alleged malice. Plaintiff is mistaken.

Plaintiff has indeed alleged that all defendants "falsely represented that Keddington's wood floors were damaged as a result of faulty workmanship on the part of plaintiff. . . . Defendants knew said representations were false when they were made or made said false representations recklessly without knowledge whether they were true or false. Defendants . . . made said false representations with the intent to defraud plaintiff by intentionally and/or negligently misrepresenting and concealing material facts from the Los Angeles County Superior Court and the State Contractors Licensing Board . . . ." Plaintiff also has alleged, however, that "[n]either Keddington nor Farmers (who had knowledge of the rain damage [to the wood floors plaintiff had installed]) informed Spiegel of the rain damage which occurred only weeks subsequent to plaintiff leaving the unfinished job site. . . . [Spiegel's] reports were made recklessly and without knowledge of whether they were true or false . . . . Farmers intentionall[y] concealed said information from the expert estimator they hired to inspect Keddington's floors."

Plaintiff's more specific allegations shift the alleged malice to the shoulders of Keddington and Farmers Insurance Company, leaving defendant Spiegel liable, at most, for negligent misrepresentation. That may be a form of deceit (Civ. Code, § 1710, subd. 2; *Gagne v. Bertran* (1954) 43 Cal.2d

481, 487-488 [275 P.2d 15]), but it is not malice (Civ. Code, § 3294, subd. (c)(1)).

Plaintiff also alleges that defendant Spiegel "intentionally misrepresented the alleged extent of damage to Keddington's floor by submitting an admittedly false repair estimate which inflated the alleged damage repair cost." As noted above, however, from judicially noticed facts and plaintiff's admissions, defendant Spiegel did not prepare an "admittedly false repair estimate." He prepared two estimates at the behest of Keddington and Farmers Insurance Company: one reflecting the cost of repair, as defendant Spiegel advised, and another reflecting the cost of replacement, as Keddington desired. Both clearly stated what they covered. Inasmuch as defendant Spiegel always made clear both to the board and to the insurer that he believed repair to be adequate, he made no false representation in preparing an estimate of replacement cost. Inasmuch as preparation of that estimate does not qualify as an intentional falsehood, it does not qualify as malice. (Civ. Code, § 3294, subd. (c)(1).) Moreover, it is clear that plaintiff cannot allege facts that do qualify as malice.

In summary, all of defendant Spiegel's publications, from inspecting and reporting on the condition of Keddington's floor on two occasions, through the preparation of two estimates, to his testimony before the board, are privileged publications rendering him immune from liability for any tort other than malicious prosecution. The trial court therefore did not abuse its discretion in sustaining without leave to amend the demurrer to plaintiff's first through third causes of action.

*Malicious Prosecution*

█ In *Hogen v. Valley Hospital, supra,* 147 Cal.App.3d 119, the court held that when a state licensing board is "empowered and directed to conduct an . . . investigation" of complaints from the public, a person allegedly filing a false report with the board that results in the filing of charges against the plaintiff is not subject to malicious prosecution. (*Hogen,* at p. 125.) The rationale for this holding may be found in *Johnson v. Superior Court* (1994) 25 Cal.App.4th 1564 [31 Cal.Rptr.2d 199]. The *Johnson* court states, with respect to the California Boards of Psychology and Behavioral Sciences Examiners, "[e]xpert consultants are vital to the Boards' task. Suffice it to say that the threat of being sued for malicious prosecution would deter all but the most fearless experts from serving as consultants to the Boards. Without those experts, the Boards' disciplinary activities would soon grind to a halt." (*Johnson,* at p. 1570.)

Plaintiff attempts to distinguish these cases by arguing that the Contractors' State License Board is not "empowered and directed to conduct an . . .

investigation" of consumer complaints. (*Hogen v. Valley Hospital, supra*, 147 Cal.App.3d at p. 125.) Business and Professions Code section 2220, subdivision (a), provides that the Division of Medical Quality of the Medical Board of California "*may* take action against all persons guilty of violating this chapter. The division *shall* enforce and administer this article as to physician and surgeon certificate holders, and the division *shall* have all the powers granted in this chapter for these purposes including, but not limited to[] [¶] . . . [i]nvestigating complaints from the public . . . ." (Italics added.) Business and Professions Code section 7090, which governs the Contractors' State License Board, provides that "[t]he registrar *may* upon his or her own motion and *shall* upon the verified complaint in writing of any person, investigate the actions of any . . . contractor . . . within the state and *may* deny the licensure or the renewal of licensure of, or cite . . . any license . . . if the . . . licensee . . . commits any one or more of the acts or omissions constituting causes for disciplinary action." (Italics added.)

There is no qualitative difference in the manner in which these two state boards are "empowered and directed" to investigate complaints from the public. (*Hogen v. Valley Hospital, supra*, 147 Cal.App.3d at p. 125.) Each has the power and the duty to investigate and enforce the statutes pertaining to its particular licensing area. Each deals with an area in which expert opinion will be essential to its investigations. Accordingly, there is no reason why the immunity extended to a person allegedly filing a false report with these respective boards should differ.

In summary, defendant Spiegel only filed a report with the board. It is the board itself that initiated a citation proceeding. Accordingly, although defendant Spiegel's allegedly false report resulted in initiation of the citation proceeding, defendant Spiegel is immune from liability for malicious prosecution. (*Hogen v. Valley Hospital, supra*, 147 Cal.App.3d at p. 125; cf. *Johnson v. Superior Court, supra*, 25 Cal.App.4th at pp. 1570-1571.) The trial court therefore did not abuse its discretion in sustaining the demurrer to the fourth cause of action.

The order of dismissal is affirmed.

Ortega, J., and Mallano, J., concurred.

On February 28, 2001, the opinion was modified to read as printed above.