Filed 1/27/21  LaPierre v. Columbia Casualty Co. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MAUREEN LAPIERRE, | C087812 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2018-00227816-CU-NP-GDS) |
| v. | |
| COLUMBIA CASUALTY COMPANY et al., | |
| Defendants and Respondents. | |

This appeal follows a constellation of actions that began with a medical malpractice action brought by Maureen LaPierre against Efrain Gonzalez, M.D. (*LaPierre v. Low McKinley Baleria & Salenko, LLP, et al*. (Dec. 20, 2018, C083171) [nonpub. opn.] (*LaPierre I*).)[1]  In a subsequent criminal action, Gonzalez pleaded no contest to three criminal offenses arising from various surgical procedures not related to

---

[1]    The request for judicial notice filed by Thomas Garberson and Paul Baleria to take notice of this court's prior decision is granted.  (Evid. Code, §§ 452, subd. (d), 459.)

the medical procedure he performed on LaPierre. After LaPierre picketed against Gonzalez outside his residential gated community, he filed a civil harassment action against LaPierre. LaPierre responded with a successful anti-SLAPP motion under Code of Civil Procedure section 425.16.[2] LaPierre then filed a new action based on the anti-SLAPPback statute (§ 425.18) against Gonzalez and Low McKinley Baleria & Salenko, LLP (LMBS), the law firm that represented Gonzalez in the original medical malpractice action. Gonzalez and LMBS responded with their own anti-SLAPPback motion that was granted by the trial court. LaPierre appealed. In *LaPierre I*, this court held LaPierre's claims against Gonzalez and LMBS arose out of protected activity, but she failed to demonstrate a probability of prevailing on the merits. (*LaPierre I, supra*, C083171.)

While the appeal was pending in *LaPierre I*, LaPierre filed a new action against Thomas Garberson and Paul Baleria (who are partners of the LMBS law firm), and against Columbia Casualty Company (Columbia).[3] Defendants filed an anti-SLAPP motion to LaPierre's claims on grounds that all allegations in her operative complaint arose out of protected activity and were subject to the litigation privilege of Civil Code section 47. The trial court granted the anti-SLAPP motion as to the claims for intentional infliction of emotional distress and fraud, but denied the motion as to the claim for breach of contract.

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

[3] Columbia was erroneously sued as CNA Insurance. Columbia provided the insurance under which Gonzalez received legal representation in LaPierre's medical malpractice action. Columbia was not a party to that medical malpractice action.

We refer to Garberson, Baleria, and Columbia collectively as the defendants.

As best we can discern, LaPierre argues on appeal that (1) defendants'[4] illegal conduct was unprotected by the anti-SLAPP statute, (2) defendants engaged in undue influence by coercing her to sign a settlement agreement in her medical malpractice case, (3) defendants suborned perjury of their own expert witness, (4) defendants wrongfully rejected two offers to compromise within insurance policy limits, (5) defendants sent her an extortionate demand letter, (6) she was defamed by defendants, (7) defendants made false police reports about her, (8) defendants perjured themselves, (9) defendants breached an implied covenant of good faith and fair dealing by filing an action they did not believe was legally tenable, (10) defendants violated Insurance Code section 790.03, subdivision (h)(5), by not settling the case in good faith, (11) defendants engaged in fraud through perjury, (12) "Civil Code [section] 47 states a statutory privilege not a constitution[al] protection," and (13) defendants engaged in extreme and outrageous conduct warranting the claim of intentional infliction of emotional distress.

We take a step back from this litany of arguments to note that the only question we need to resolve in this appeal is whether the trial court erred in granting the defendants' anti-SLAPP motions. To demonstrate reversible error, LaPierre must show the claims in the complaint did not arise out of protected activity or if the claims did arise out of protected activity, she has a probability of prevailing on the merits. We conclude LaPierre does not meet her burden to establish the complained of conduct did not arise out of protected activity. And she makes no attempt to demonstrate a probability of prevailing on the merits. Accordingly, we affirm.

---

[4]  In its order, the trial court noted that "[i]t is unclear from the [operative complaint] whether the causes of action are asserted against all or only some of the name[d] defendants as [LaPierre] uses the term 'Defendants' generally." Similarly, LaPierre's arguments on appeal refer generally to the defendants with little or no distinction between them.

3

BACKGROUND

The California Rules of Court require that an appellant's opening brief "[p]rovide a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) This means, "[i]n every appeal, 'the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. [Citation.] Further, the burden to provide a fair summary of the evidence "grows with the complexity of the record." ' " (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739, quoting *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.)

LaPierre's opening brief does not contain the required statement of the facts. Moreover, as Garberson and Baleria point out, the 39-page opening brief contains only 13 cites to the record. As we explain in part VI, LaPierre's lack of support for her arguments by references to the appellate record forfeits a substantial number of her arguments. Nonetheless, we recount the following background of this case to provide the context for LaPierre's arguments on appeal.

In March 2018, LaPierre filed a first amended complaint (the operative complaint) in which she asserted claims for breach of contract, intentional infliction of emotional distress, and fraud. The operative complaint focused on defendants' conduct in providing legal representation in a medical malpractice action, bankruptcy proceedings, arbitration, and a mediation. The breach of contract claim alleged that she had been compelled to "sign an over-broad release that included claims that had nothing do with the case at hand, [and] that was so broad that it goes against public policy and state statute." The breach of contract claim alleges failure to pay some portion of the agreed-upon settlement amount.

The operative complaint also alleged "10 counts" of intentional infliction of emotional distress resulting from defendant's proffering an overbroad release, suborning perjury of an expert witness, rejecting offers to compromise, "threatening to defame her to the arbitrator of the pending medical malpractice case," actually defaming her to the

arbitrator, filing a "legally untenable" request for temporary restraining order, "perjuring themselves in their own self serving declaration on 'information and belief,' " filing a "legally untenable" anti-SLAPP motion and bringing other motions in litigation, violating Insurance Code section 790.03 by failing to negotiate in good faith, and making defamatory statements to another attorney and to the Rocklin Police Department. LaPierre also alleged a cause of action for fraud based on allegations that defendants made perjured statements in connection with litigation.

Baleria and Garberson responded by filing an anti-SLAPP motion in which they argued the operative complaint's allegations related to protected activity in connection with their role in representing LaPierre's former doctor. Baleria and Garberson further argued LaPierre could not establish a probability of prevailing on the merits.

LaPierre opposed the anti-SLAPP motion, arguing that the defendants' conduct did not implicate protected activity " 'in connection with a public issue' " and consisted of enumerated illegal acts that were not the subject to the litigation privilege.

Columbia filed its own anti-SLAPP motion. Columbia argued that many of the acts alleged in the operative complaint related to Baleria and Garberson only. The insurance company further argued that LaPierre released all her claims relating to the medical malpractice action and she lacked standing to bring claims alleging bad faith settlement tactics.

LaPierre filed an opposition that seemed to respond to Columbia's anti-SLAPP motion. LaPierre argued she was not bound by the release and that her operative complaint did not relate to actions protected by the litigation privilege.

The trial court granted the anti-SLAPP motions as to LaPierre's claims for intentional infliction of emotional distress and fraud but denied the motion as to her claim for breach of contract. In granting the anti-SLAPP motions in part, the trial court found that "the allegations supporting these causes of action arise out of acts in furtherance of Defendants' right to petition as the allegations are substantially based on Defendants'

5

statements and actions taken in connection with the arbitration, mediation, and litigation in which they were involved in with Plaintiff."

The trial court explained that "[b]ecause the communications are absolutely privileged pursuant to Civil Code 47[, subdivision] (b), [LaPierre] cannot meet her burden to show the elements of a prima facie case. [LaPierre] cannot demonstrate by admissible evidence that the [operative complaint] is: (1) legally sufficient; and (2) supported by facts sufficient to sustain a favorable judgment if the evidence submitted is credited. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821; *Navel[l]ier v. Sletten* (2002) 29 Cal.4th 82, 89, 93; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 15.) Further, [LaPierre] has not presented any argument as to her probability of prevailing on her claims, which is another basis upon which the Court finds she cannot meet her burden. [LaPierre's] opposition only addresses the first prong of the analysis - whether the alleged activity is protected."

LaPierre timely filed a notice of appeal from the trial court's order granting the anti-SLAPP motion in part.[5]

## DISCUSSION

## I

### *The Anti-SLAPP Statute*

In enacting the anti-SLAPP statute, the Legislature sought to discourage "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) To this end, section 425.16 provides, in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech

---

[5] An order granting an anti-SLAPP motion as to fewer than all causes of action is an appealable order. (§ 425.16, subd. (i); *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 364-365, 371.)

under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In determining whether the anti-SLAPP statute applies to a claim, courts engage in a two-step analysis. " ' "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." ' (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712, ellipsis in original, quoting *Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) ' " ' The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation.]" [Citations.] "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." [Citation.]' (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.) Our review of the denial of a motion to strike under the anti-SLAPP statute is de novo." (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34-35.)

## II

### *Suborning Perjury*

LaPierre argues that "[t]he Defendants committed a crime by suborning the perjury of their own expert medical witness Dr. Goodman, in their Motion for Summary Judgment" in the medical malpractice case. The argument represents a five-page factual attack on Dr. Goodman's medical opinion in an attempt to prove defendants in this case suborned perjury. Other than a citation of the first page of Dr. Goodman's declaration, LaPierre's argument is bereft of any references to the appellate record.

7

For purposes of the anti-SLAPP statute, it is well settled that "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) Here, the production of Dr. Goodman's declaration for defense of a medical malpractice action constitutes protected activity. (See *id.* at p. 1062.) The introduction of the declaration in a prior action related directly to the right of petition and is subject to the anti-SLAPP statute.

Even if Dr. Goodman's declaration were false, this would not establish that defendants' conduct fell outside the realm of protected activity under the anti-SLAPP statute. The California Supreme Court has held that "[i]f . . . a factual dispute exists about the legitimacy of the defendant's conduct," such dispute "cannot be resolved within the first step [of an anti-SLAPP analysis], but must be raised by the plaintiff *in connection with the plaintiff's burden to show a probability of prevailing on the merits*." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 316, italics added (*Flatley*).) LaPierre, however, does not attempt to demonstrate a probability of prevailing on the merits for her claim of suborning perjury. In any event, such an attempt would fail because "our Supreme Court long ago ruled that injurious perjury and suborning such perjury cannot be the basis of a civil action." (*Carden v. Getzoff* (1987) 190 Cal.App.3d 907, 915, citing *Taylor v. Bidwell* (1884) 65 Cal. 489, 490.) LaPierre has not met her burden to show her claim of suborning perjury was erroneously stricken by the trial court under section 425.16.

## III

### *Extortion*

As in *LaPierre I* (*LaPierre I*, *supra,* C083171), LaPierre argues the anti-SLAPP statute does not apply to bar a claim based on an e-mail she claims constituted the illegal act of extortion and violated defendants' obligations under the State Bar Rules of

Professional Conduct, former rule 5-100(A).**6** LaPierre's argument is founded on an e-mail Baleria sent to her in which he stated: "Ms. LaPierre, it has come to my attention that you were picketing outside Dr. Gonzalez' neighborhood yesterday. Please refrain from doing so again as such behavior constitutes harassment of Dr. Gonzalez and his family. [¶] If you continue to harass Dr. Gonzalez and his family, this matter will be brought to the attention of the arbitrator in this case. Further, Dr. Gonzalez will consider all legal remedies available to him."

In *LaPierre I*, this court analyzed the same argument about the same e-mail as follows: "LaPierre argues . . . that the cease and desist letter constituted extortion as a matter of law. 'Extortion is the obtaining of property or other consideration from another, with his or her consent . . . induced by a wrongful use of force or fear.' (Pen. Code, § 518, subd. (a).) On its face, the cease and desist letter only threatens litigation in the event that LaPierre continued to 'harass' Gonzalez. The cease and desist letter does not make any demand for money or property, and nothing in LaPierre's declarations or documentary evidence suggests that anyone said anything to lead LaPierre to believe that the letter should be understood to make such a demand. (Cf. *Flatley, supra,* 39 Cal.4th at p. 332 [noting that 'any doubt as to [the] extortionate character of [the defendant's demand] letter' was dispelled by evidence of telephone calls in which the defendant set deadlines for payment].)" (*LaPierre I*, *supra,* C083171 [p. 18].)

As part of the analysis of LaPierre's extortion claim in *LaPierre I*, this court rejected her reliance on Rules of Professional Conduct, rule 5-100(A). This court

---

**6**    Rules of Professional Conduct, rule 5-100(A) has been renumbered as rule 3.10(a), without substantive change. Rule 3.10(a) provides, "A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." (Cf. *J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 15, fn. 12.) Because our prior opinion referred to rule 5-100(A) and there has been no substantive change, this opinion refers to rule 5-100(A) for the sake of consistency and convenience.

9

explained, "LaPierre also argues the cease and desist letter amounts to a violation of rule 5-100(A), which provides: 'A member shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute.' Rule 5-100(A) has no obvious application here. The cease and desist letter does not threaten criminal, administrative or disciplinary charges. The letter threatens civil litigation to secure a civil remedy—a restraining order—and expressly refers to the applicable statute in the Code of Civil Procedure. Nothing in the record suggests that anyone said anything to lead LaPierre to believe the letter should be understood to threaten criminal, administrative, or disciplinary charges. And even if the letter could be understood to do so, LaPierre fails to explain how such a threat would have conferred an advantage on defendants in the medical malpractice action, or any other civil dispute." (*LaPierre I*, *supra,* C083171 [p. 19].)

Although this court's decision in *LaPierre I* involved LMBS, the reasoning applies equally to this case. Consequently, we reject LaPierre's argument that the e-mail constituted the illegal act of extortion or a violation of the Rules of Professional Conduct in a manner that would remove the communication from the purview of the anti-SLAPP statute.

## IV

### *False Police Reports*

Under the heading of "Count Six-SLAPP Action," LaPierre asserts that "defendants conspired to bring false police reports stating that [she] was engaged in illegal activity (harassing, obstructing, yelling, stalking, aggressively running up to neighbors and Gonzalez) . . . ." The second part of the discussion under this heading involves LaPierre's assertion that "[w]hen the false police reports did not work the Defendants filed an action in the form of a TRO/Injunction on February 2016." LaPierre concludes that "[t]heir conduct was reprehensible."

10

We discern no *legal* argument in LaPierre's *factual* assertions. In the discussion regarding "Count Six" LaPierre does not develop an argument about how the trial court might have erred by granting the anti-SLAPP motion. "We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) Self-represented litigants are held to the same standards as attorneys. (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.) The "failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error]." (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117.) Thus, a self-represented litigant is "treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) In the absence of developed legal argument on this issue, we deem the contentions in this section to be forfeited.

## V

### *Defamation*

LaPierre argues she was defamed by defendants when they disclosed information to an arbitrator. This argument is presented without citation to legal authority. To secure a reversal, an appellant must affirmatively demonstrate error by citation to legal authority in support of the argument. "When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408, quoting *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647.) As a result, this argument is deemed forfeited.

11

## VI

### *Arguments Forfeited for Lack of Citation to the Appellate Record*

In addition to citations to legal authority, an appellant must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) When an argument is not supported with appropriate references to the record to support an argument on appeal, we may deem the argument forfeited. (E.g., *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 800.)

In the absence of *any* citations to the appellate record, LaPierre has forfeited the arguments that (1) "conclusive evidence of the violation of any state statute is sufficient to trigger application of the illegality exception," (2) defendants breached an implied covenant of good faith and fair dealing by filing an action they did not believe was legally tenable, (3) defendants violated Insurance Code section 790.03, subdivision (h)(5), by not settling the case in good faith, (4) she was defamed when defendants made statements about her in the bankruptcy case and to the Rocklin Police Department, (5) defendants engaged in fraud through perjury, and (6) defendants engaged in extreme and outrageous conduct warranting the claim of intentional infliction of emotional distress. None of these arguments contains a single citation to the appellate record.

We also deem forfeited LaPierre's argument that defendants wrongfully rejected two offers to compromise within insurance policy limits. LaPierre asserts that "Defendants rejected two Offers to Compromise within the policy limits with no reason but to prolong Ms. LaPierre's pain and suffering." However, the single citation to the appellate record offered in support of the argument refers to a page of witness testimony in a prior criminal action against Gonzalez. The testimony on the cited page does not

12

relate to offers to compromise. The argument is forfeited for lack of any citation to the record in support of LaPierre's argument.

Likewise, we deem forfeited LaPierre's contention that defendants "misused the process by perjuring *themselves* in their own self serving declaration on 'information and belief.'" (Italics added.) Although LaPierre provides two record citations, neither supports her assertion. The first citation refers to a minute order in which the trial court overruled LaPierre's objection to a declaration by Garberson. The order, however, does not quote or discuss any part of the underlying declaration. LaPierre's second citation is to a declaration by Gonzalez, who is not a defendant in this action. Thus, the declaration does not support the argument that defendants in this case perjured *themselves*.

We also deem forfeited LaPierre's argument that defendants engaged in undue influence in pressuring her to sign a settlement agreement in her medical malpractice action against Gonzalez. The only citation offered by LaPierre in support of this argument refers to a one-page excerpt from what appears to be a settlement agreement. Thus, LaPierre's factual assertions about the manner in which defendant's engaged in undue influence are unsupported and therefore forfeited.[7]

## DISPOSITION

The trial court's orders granting defendants' anti-SLAPP motions as to Maureen LaPierre's causes of action for intentional infliction of emotional distress and fraud are

---

[7] In light of our affirmance of the trial court's order insofar as it granted the anti-SLAPP motion, we do not need to address Columbia's contention that LaPierre lacks standing to assert claims against it in connection with the settlement agreement.

13

affirmed.  Defendants Columbia Casualty Company, Thomas Garberson, and Paul Baleria shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/
HOCH, J.

We concur:

/s/
BLEASE, Acting P. J.

/s/
ROBIE, J.