Filed 2/9/26  Petrini v. Simon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KATRINA P. PETRINI, | H052200 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 22CV396254) |
| v. | |
| SCOTT SIMON, et al., | |
| Defendants and Respondents. | |

Appellant Katrina Petrini was employed by Scott Simon (Simon) and Simon Group Consulting, Inc. (collectively, Defendants), but left to start her own vocational evaluation business.  Petrini sued Defendants, alleging Simon defamed her in a letter he sent her after receiving a reference request regarding Petrini and her new business.  Petrini also alleged Simon defamed her when he provided a letter of termination to the Employment Development Department (EDD) about her, and when Defendants' attorney questioned her during a deposition.  Additionally, Petrini alleged she was compelled to self-publish the termination letter when she applied for other jobs.

Petrini appeals the judgment entered against her following the trial court's grant of Defendants' motion for summary judgment.  We separately adjudicate the three "counts" in the first cause of action for defamation and conclude summary adjudication of the first count should have been denied because there is a triable issue of material fact as to the existence of malice when Simon published the letter regarding the reference requests,

which would preclude the application of the common interest privilege. We also conclude summary adjudication should have been denied as to the second cause of action for coerced self-publication because Defendants failed to meet their initial burden, asserting only that Petrini did not offer evidence that she was compelled to self-publish statements about her termination or her qualifications to any third party. Accordingly, we reverse the judgment, and direct the trial court to reinstate the first count of the first cause of action, and the second cause of action.

## I.    BACKGROUND

### A.    *Complaint*

In March 2022, Petrini filed a lawsuit against Defendants. The complaint set forth causes of action for: (1) defamation per se; (2) coerced self-publication – defamation; (3) commercial disparagement – trade libel; and (4) intentional infliction of emotional distress. Petrini alleged the following:

Scott Simon is a licensed marriage and family therapist who has been working as a vocational expert for more than 30 years. Petrini began working for Simon in August 2016 as an office manager. She performed administrative tasks, in addition to proofreading, editing, and issuing vocational evaluation reports for injured workers to be used in workers' compensation and civil litigation cases.

Petrini applied to graduate school in early 2017 to enter the industry as a professional clinician and provide vocational expert work for workers' compensation and civil litigation cases. She earned a master's degree in health services administration with a double major in rehabilitation from the University of North Texas.

Petrini's employment contract contained a non-competition clause, but Petrini refused to sign the contract and Simon reduced Petrini's hours. Petrini filed for benefits with the EDD, but Simon reported to the EDD that Petrini voluntarily reduced her own hours.

Petrini eventually opened her own company and began advertising to civil litigation and workers' compensation attorneys as a vocational expert. Prospective clients contacted Simon for a reference. In response to the reference requests, Simon sent Petrini a letter "informing [Petrini] of what [Simon] was telling prospective employers/clients." The letter "contained many false statements pertaining to training, duties performed and [Petrini's] experience with Simon Group Consulting." In the letter, Simon stated that Petrini "never performed any vocational expert evaluations, [has] never been trained in vocational testing, [or] [r]ehabilitation [c]ounseling, and developed no job placement expertise while working with Simon Group Consulting." Simon stated he would "repeat the [d]efamatory references to each prospective client and potential employers" and that "he was keeping a list of all [Petrini's] potential employers/clients who called for a reference." The message was "published to Tamara Nichols," Simon's office manager, and "to a 'long term referral source' of [Simon]."

Simon "contacted [Petrini's] business partner and stated that [Petrini] should leave the vocational rehabilitation expert industry." Petrini also "received phone calls from attorneys repeating [Simon's] [d]efamatory statements as well as the [EDD]."

In addition to the letter regarding the reference requests, Simon had previously sent a termination letter to Petrini on March 25, 2021. The letter falsely accused Petrini of job abandonment and insubordination, which was not true. Petrini had taken paid family leave due to her daughter's illness and Simon chose to terminate Petrini's employment rather than have Petrini come back to work. Simon provided the termination letter to the EDD.

Petrini filed a workers' compensation claim due to emotional distress from Defendants' actions. During a November 2021 deposition, Defendants' attorney questioned Petrini in a manner that mirrored the language from the June letter regarding the reference requests. This caused Petrini more emotional distress.

Petrini needed to seek new employment after her termination.  She applied to several job postings, including to one from the County of Santa Cruz, Juvenile Justice Department, and was required to self-publish information regarding her termination.

**B.**     ***Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication***

Defendants filed a motion for summary judgment or, in the alternative, summary adjudication.[1]  In their separate statement of undisputed material facts, they set forth the following facts and evidence:

Scott Simon was Petrini's former employer.  On June 11, 2021, Simon wrote a letter to Petrini notifying her of an inquiry his office had received regarding Petrini's qualifications, advising her of what he could truthfully say about her work for him, and asserting he could not verify her qualifications as a vocational rehabilitation expert.  During Petrini's first four years of employment with Simon, Petrini calendared appointments, sent out appointment letters and transmittals, proofed and invoiced reports, tended to accounts receivable, and other tasks.  In Petrini's final six to nine months of employment, Simon began training her to assist with doing transferable skills vocational evaluations and research for Simon's reports.  During the course of her employment, Petrini never performed a vocational expert evaluation, provided any rehabilitation counseling, or trained in vocational testing.  The statement made about Petrini's qualifications was made solely to Petrini.

In her response to Defendants' separate statement, Petrini disputed all material facts except for the fact that Simon was her former employer.

Following a hearing, the trial court issued an order granting Defendants' motion for summary judgment.  The court entered judgment in favor of Defendants.

Petrini timely appealed the judgment.

---

[1] Petrini filed her own motion for summary judgment in May 2023, on the ground that Defendants have no "viable defenses."  That motion is not at issue in this appeal.

## II. DISCUSSION[2]

### A. *Legal Principles*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The summary judgment procedure, set forth in Code of Civil Procedure section 437c, has been explained by the California Supreme Court: "Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his favor on a cause of action (i.e., claim) or defense[ ]. . . . The moving party must 'support[ ]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' [Citation.] Likewise, any adverse party may oppose the motion, and, 'where appropriate,' must present evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' [Citation.]" (*Aguilar*, at p. 843.)

"There are two burdens applicable to a motion for summary judgment." (*Welborne v. Ryman-Carroll Foundation* (2018) 22 Cal.App.5th 719, 724.) "From commencement to conclusion, the moving party bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 845, fn. omitted.) Further, "the moving party bears a burden of production to make a prima facie showing of the nonexistence of any genuine issue of material fact. If he carries his burden of production, he causes a shift: the

---

[2] Petrini's objections to the declaration of Scott Simon are overruled. Petrini objects only on the basis that she believes certain statements in the declaration are false and perjurious, but she does not make any objection as to the inadmissibility of the statements. We decline to rule on other objections by the parties, as they are not material to the disposition of the motion. (Code Civ. Proc., § 437c, subd. (q).)

5

opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a genuine issue of material fact." (*Ibid*.)

In a summary judgment proceeding, the pleadings serve "as the outer measure of materiality." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.) More specifically, " '[t]he function of the pleadings in a motion for summary judgment is to delimit the scope of the issues:  the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings.'  [Citations.]  The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action.  [Citation.]" (*Ibid*.)

As an alternative to a motion for summary judgment, "[a] party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty, if the party contends that the cause of action has no merit, that there is no affirmative defense to the cause of action, that there is no merit to an affirmative defense as to any cause of action, that there is no merit to a claim for [punitive] damages, . . . or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs.  A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1)-(2).)  A motion for summary adjudication "shall proceed in all procedural respects as a motion for summary judgment." (*Id.*, subd. (f)(2).)

"On appeal, we examine the record de novo, viewing the evidence in the light most favorable to the plaintiff as the losing party and resolving any evidentiary doubts or ambiguities in her favor.  [Citations.]" (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620.)

## B.     *First Cause of Action – Defamation Per Se*

"Defamation is an invasion of the interest in reputation." (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645.)  "The tort of defamation 'involves (a) a publication that

6

is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' [Citations.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) It is a "well recognized principle that the question of whether or not [an] utterance is reasonably susceptible of a defamatory meaning is a question of law for the court." (*Arno v. Stewart* (1966) 245 Cal.App.2d 955, 959.)

"A statement is defamatory when it tends 'directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits.' [Citation.] Statements that contain such a charge directly, and without the need for explanatory matter, are libelous per se. [Citation.]" (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112; Civ. Code, § 45 ["[l]ibel is a false and unprivileged publication by writing . . . which has a tendency to injure [a person] in his [or her] occupation"]; Civ Code, § 45a ["A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face."].) When a statement is libelous per se, a plaintiff need not prove special damages. (See *Balla v. Hall* (2021) 59 Cal.App.5th 652, 676.)

Petrini's defamation cause of action references three different "publications": (1) the June 11, 2021, letter sent by Simon to Petrini regarding what Simon could state in response to reference requests; (2) the March 25, 2021, letter from Simon to the EDD regarding Petrini's reasons for leaving her job with Simon; (3) questions from Simon's attorney during a November 16, 2021, deposition.

### i.      *Separate Causes of Action*

The first cause of action is split into three "counts." As we will discuss, we conclude that summary adjudication of the first count of the first cause of action should have been denied, but that the second and third counts cannot be maintained. Generally,

7

neither a motion for summary adjudication nor a motion for judgment on the pleadings can be granted as to only part of a cause of action. (Code Civ. Proc., § 437c, subd. (f) ["A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty."]; *Santa Clarita Organization etc. v. County of Los Angeles* (2024) 105 Cal.App.5th 1143, 1165 ["A motion for judgment on the pleadings, like a demurrer, cannot be granted as to only a portion of a cause of action."].) However, "[t]he policy behind motions for summary judgment and summary adjudication is to 'promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials.' [Citation.]" (*Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854 (*Lilienthal*).) Therefore, courts may apply the summary adjudication statute "in a manner which would provide for the determination on the merits of summary adjudication motions involving separate and distinct wrongful acts which are combined in the same cause of action." (*Ibid.*)

The *Lilienthal* case arose out of legal services provided "at different times on two separate and distinct matters." (*Lilienthal*, *supra*, 12 Cal.App.4th at p. 1850.) The complaint contained causes of action for breach of contract and negligence. (*Ibid.*) The appellate court observed that the legal services were provided in two matters, which had "no relation to each other and involve[d] legal services performed at different times, with different and distinct obligations, and distinct and separate alleged damages." (*Id.* at p. 1854.) It concluded that the two matters therefore set forth "two separate and distinct causes of action regardless of how pled in the complaint." (*Ibid.*)

In *Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1114-1115 (*Fineman*), the plaintiff alleged that over a period of more than six years, the plaintiff's bank had honored and paid 83 checks in the total amount of $248,000 drawn from the plaintiff's account without proper authorization. The bank moved for summary adjudication with respect to 23 of the checks on the grounds that claims on those checks

8

were time-barred.  (*Id*. at p. 1115.)  Among other arguments, the plaintiff argued that summary adjudication could not be granted because it would not dispose of an entire cause of action.  (*Id*. at p. 1116.)  The appellate court concluded under *Lilienthal* that "notwithstanding the aggregation of the 23 . . . checks, each constitutes a separate cause of action susceptible to a complete disposition . . . ."  (*Id*. at p. 1118.)

*Lilienthal* and *Fineman* stand for the proposition that a court is not necessarily bound by the form in which a plaintiff pleads the complaint.  Although the general rule is that a cause of action cannot be split for purposes of summary adjudication, such a motion may be appropriate when separate and distinct causes of action are combined as one.  In evaluating whether a complaint includes one or more causes of action for pleading purposes, courts generally look to the primary rights theory.  (*Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1257.)  The theory "provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty.  [Citation.]"  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.)  Because in this case we are faced with a defamation cause of action, however, it is unnecessary to engage in such a determination.

It is the rule that "each publication of a defamatory statement gives rise to a new cause of action for defamation . . . when the original defamer repeats or recirculates his or her original remarks to a new audience.  (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1243 (*Shively*); *Hebrew Academy of San Francisco v. Goldman* (2007) 42 Cal.4th 883, 891 (*Hebrew Academy*) ["Under the general rule, a new cause of action for defamation arises each time the defamer 'repeats or recirculates his or her original remarks to a new audience.  [Citations.]'  [Citations.]"]; *Di Giorgio Corp. v. Valley Labor Citizen* (1968) 260 Cal.App.2d 268, 273 [it is "the general rule that every repetition of the defamation is

9

a separate publication and hence a new and separate cause of action"].)[3]  The three counts in the first cause of action each concern a different "publication."  Moreover, the second count relates to the March 25, 2021 letter of termination sent to the EDD, a completely different document than the letter in the first count which Simon sent to Petrini regarding her work history.  The alleged publication of the termination letter or its contents, and the alleged publication in connection with the deposition, constitute separate defamation causes of action from the first count.  Accordingly, we will treat each count as a separate cause of action for purposes of analyzing the motion for summary adjudication.  (See *Exxon Corp. v. Superior Court* (1997) 51 Cal.App.4th 1672, 1688, fn. 11 [a party may move for summary adjudication to "dispose of allegations which would have formed a single cause of action if properly pleaded"].)

ii.  ***Count 1 – Simon's Letter to Petrini Regarding Reference Requests***

As is relevant to this appeal, Simon stated the following in the June 11, 2021, letter regarding Petrini's work history:  "My reply is that you worked here for approximately the first four years as the Office Manager.  In that role you had involvement in calendaring appointments, sending out appointment letters and transmittals, proofing and invoicing reports, accounts receivable and several other tasks.  In the final six to nine months, you were trained to help out by doing transferable skills evaluations, research etc., for our reports.  [¶]  However, I cannot verify that you have

---

[3] We note that a limitation has been placed on this rule, namely the single-publication rule codified in Civil Code section 3425.3, which "provides 'that, for any single edition of a newspaper or book, there [is] but a single potential action for a defamatory statement contained in the newspaper or book, no matter how many copies of the newspaper or the book were distributed' " and under which "publication generally is said to occur on the 'first general distribution of the publication to the public.' " (*Hebrew Academy*, *supra*, 42 Cal.4th at p. 890; *Shively*, *supra*, 31 Cal.4th at p. 1245.)  The single-publication rule pertains to the statute of limitations, however, and does not apply here.  Further, the protection of the rule "is not extended . . . to situations where, knowing that matter is allegedly libelous, the defendant republishes." (*Kanarek v. Bugliosi* (1980) 108 Cal.App.3d 327, 332.)

ever performed *any* vocational expert evaluations. You have never been trained in vocational testing, Rehabilitation Counseling and developed no job placement expertise while working here."

Simon made the statements in his letter after receiving at least one reference request regarding Petrini. Asserting that she did not have the expected qualifications for potential employment is a statement that would have a tendency to injure Petrini in her occupation and in her attempts to either gain new employment or attract clients. Publication of the letter therefore could support a cause of action for defamation per se if all other elements of the cause of action are met.

Simon states in his declaration in support of the motion for summary judgment that "[a]t no time within the course and scope of Petrini's employment with my company did she perform a single vocational expert evaluation, provide any rehabilitation counseling, train in vocational testing, or develop any job placement expertise—all of which are essential to being a vocational rehabilitation expert." Simon also states in his declaration that in his June 11, 2021 letter he "advised Petrini of what [he] could truthfully say about the work she performed while employed at [his] company, and that [he] was unable to verify her qualifications as a vocational rehabilitation expert." This evidence of the truth of the statements in the letter is sufficient for Defendants to meet their initial burden on summary judgment and shift the burden to Petrini to raise a triable issue of material fact regarding the falsity of the statements.

In opposition to the motion, Petrini included a number of exhibits that she asserts show she "worked in every aspect of Vocational Rehabilitation while working with [Simon]." One of these documents is for the Commission on Rehabilitation Counselor Certification and is titled "Category 3 – Graduate in Related Field: Employment and/or Supervision Verification Form." The form, signed by Petrini, includes information supplied by Simon as Petrini's "Employer/Supervisor." Simon stated on the form that Petrini's official job title was "Rehab. Counselor and Vocational Evaluator." With regard

11

to Petrini's "primary responsibilities," Simon stated: "Provide evaluation of clients with a variety of disabilities. This includes counseling, case management, planning, recommending services and client advocacy." In a portion of the form that lists certain "rehabilitation counseling activities" and asks whether the applicant performed or did not perform each activity, and the percent of time spent on the activity, Simon indicated that Petrini had performed counseling and that 20 percent of her time was spent on that activity. Simon signed the form as Petrini's supervisor and employer. Directly above his signature are the following two paragraphs: "Supervision is defined by CRCC as the systematic and periodic evaluation of the quality of the delivery of rehabilitation counseling services. By possessing the CRC credential, the supervisor has demonstrated that he/she has acquired and maintained specific competencies to practice as a rehabilitation counselor. A minimum of 12 months of supervision is necessary for certification. The supervision may be done by face-to-face meetings or via telephonic and/or electronic means of communication. [¶] I was this applicant's supervisor and, during such time, I was a CRC. I hereby certify that the applicant named on this form received a systematic and periodic evaluation of the quality of his/her delivery of services as a rehabilitation counselor while under my supervision."

It is difficult to reconcile Simon's statement in the June letter and in his declaration that Petrini was never trained in rehabilitation counseling with the assertion on the certification form that Petrini spent 20 percent of her time doing rehabilitation counseling. At the very least, this raises a triable issue of material fact as to whether all of the statements in the letter are true.

It is not sufficient, however, to establish the possibility that one or more statements may be false. A cause of action for defamation also requires that any false statement be published to another party. Simon states in his declaration that he "did not send the June 2021 letter to anyone other than Petrini, nor disseminate or publish its contents to anyone other than Petrini (and my counsel, for the purposes of defending this

action).'" This is sufficient for Defendants to meet their initial burden as to the nonpublication of the letter.

In opposition, Petrini argues that Simon published the letter to Tamara Nichols, Simon's receptionist. Petrini bases this contention on the fact that the initials "SS/tn" appear in the lower left corner of the second page of the letter. On summary judgment the opposing party may rely upon inferences that are reasonably deducible from the evidence and we must resolve any evidentiary doubts or ambiguities in the opposing party's favor. (*Stokes v. Forty Niners Stadium Management Co., LLC* (2024) 107 Cal.App.5th 1199, 1214.) It is a reasonable conclusion that the letters "tn" on the letter refer to Nichols' initials and that Nichols therefore completed some administrative task such as typing or formatting the letter to Petrini.

Defendants contend that dictation to an administrative assistant does not constitute publication.[4] In *Kelly v. General Telephone Company* (1982) 136 Cal.App.3d 278, 284 (*Kelly*), the defendant argued that there was no publication "because plaintiff alleged only that the statements were made by one of defendant's employees to other employees of defendant." The court concluded that the "argument [was] without merit as publication occurs when a statement is communicated to any person other than the party defamed. [Citations.]" (*Ibid*.) Defendants acknowledge this ruling, but argue the *Kelly* court's statement was just an ipse dixit holding and therefore not persuasive authority. We disagree, observing that *Kelly* has been cited with approval by the California Supreme Court for the proposition that communications between a company's employees may fall within the common interest privilege. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 293-294.) If communications between employees did not constitute disclosure, there would be no need to apply the common interest privilege.

---

[4] We requested supplemental briefing from the parties on this issue, which was not raised in the trial court.

13

With regard to the common interest privilege, Defendants argue that even if the letter was "published" to Nichols, such communication was protected by that privilege. Codified in Civil Code section 47, subdivision (c), the common interest privilege protects "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (Civ. Code, § 47, subd. (c).) "Application of the privilege involves a two-step analysis. The defendant has the initial burden of showing the allegedly defamatory statement was made on a privileged occasion, whereupon the burden shifts to the plaintiff to show the defendant made the statement with malice. [Citation.] The existence of the privilege is ordinarily a question of law for the court. [Citation.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 915.)

Defendants cite *Deaile v. General Telephone Company of California* (1974) 40 Cal.App.3d 841, 849 (*Deaile*), for the proposition that the privilege applies to allow an employer to communicate reasons for another employee's termination because it serves the employer's economic interest in clarifying its employment policies. In *Deaile*, the court stated that "an employer is privileged in pursuing its own economic interests and that of its employees to ascertain whether an employee has breached his responsibilities of employment and if so, to communicate, in good faith, that fact to others within its employ so that (1) appropriate action may be taken against the employee; (2) the danger of such breaches occurring in the future may be minimized; and (3) present employees may not develop misconceptions that affect their employment with respect to certain conduct that was undertaken in the past." (*Ibid*.) Likewise, "[c]ommunication among a company's employees that is designed to insure honest and accurate records involves such a common interest." (*Kelly*, *supra*, 136 Cal.App.3d at p. 285.)

14

These cases establish the applicability of the common interest privilege in factual scenarios such as that found in this case. Defendants having met the initial burden of showing that the privilege applies to the communication in question, the burden shifts to plaintiff to rebut the privilege by showing malice. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1203.) Here, we conclude that Petrini has demonstrated there is a triable issue of material fact as to the existence of malice that precludes the application of the common interest privilege.

"[M]alice is not inferred from the communication itself." (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370.) "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights [citations]." (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 936.)

The record supports a finding that Simon lacked reasonable grounds for belief in the truth of the contents of the June letter. Simon stated in the letter that Petrini was never trained in rehabilitation counseling, but less than one year earlier he had certified in writing that Petrini spent 20 percent of her time doing rehabilitation counseling. One could reasonably conclude that Simon knew that at least part of what was stated in the letter was likely false. Consequently, there is a triable issue of material fact as to the existence of malice, which defeats the common interest privilege.

For the reasons discussed, the motion for summary adjudication must be denied as to the first count of the first cause of action.

### iii.    *Count 2 - Letter to EDD*

In addition to the allegations of defamation in the first count based on the June letter, the first cause of action contains two additional counts, which Defendants did not address at all in their moving papers, reaching the second count only on reply. Under

15

most circumstances, this would be fatal to Defendant's motion as to the first cause of action because they failed to present evidence to meet their initial burden with regard to all of the allegations of that cause of action. It is also the rule, however, that "[a] motion for summary judgment necessarily tests the pleadings, and where there is a failure to state a cause of action, or . . . the action is barred on the face of the complaint, the motion is tantamount to a motion for judgment on the pleadings. [Citation.]" (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1276, fn. 25.) We therefore can examine the second and third counts as to whether they state a claim if all allegations are accepted as true and we find it appropriate to do so because we conclude the second and third counts are barred by an absolute privilege.

Petrini alleges in the second count in the first cause of action that Simon wrote a letter of termination to her on March 25, 2021, and that the letter was defamatory on its face. She alleges the letter was "provided to the EDD in an effort to prevent the Plaintiff from receiving necessary unemployment benefits."

Civil Code section 47 provides that "[a] privileged publication . . . is one made . . . [¶] [i]n any (1) legislative proceeding, (2) judicial proceeding, [or] (3) in any other official proceeding authorized by law . . . ." (Civ. Code, § 47, subd. (b).) The privilege is absolute and applies regardless of whether a communication was made with malice. (*Tilkey v. Allstate Ins. Co.* (2020) 56 Cal.App.5th 521, 544 (*Tilkey*); see also *Kashian v. Harriman, supra*, 98 Cal.App.4th at p. 913.)

The allegations regarding the EDD trigger the application of the "official proceeding privilege." This privilege "covers communications by nongovernmental speakers who participate in an official proceeding. Thus, private individuals who report instances of wrongdoing to official regulatory bodies are protected by the privilege." (*Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 993.) "The privilege applies to any communication made in such proceedings by a participant that has some connection or logical relation to the proceedings. [Citation.]"

16

(*Garamendi v. Golden Eagle Ins. Co.* (2005) 128 Cal.App.4th 452, 478.) "[M]any cases have held that the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 362.) The "privilege has been interpreted broadly to protect communications to or from *governmental* officials which may precede the initiation of formal proceedings." (*Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156.)

"The EDD has exclusive jurisdiction to investigate an employee's claim for unemployment benefits and make an eligibility determination. [Citation.]" (*Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 919.) Therefore, the privilege applies here to bar liability based on Defendants' communication with the EDD, a governmental agency, that was made in connection with Petrini's former employment. Accordingly, the second count does not state a cause of action.

### iv.	*Count 3 - Deposition Questions*

In count 3, Petrini alleges she filed a workers' compensation claim and during litigation Simon defamed her in front of one of the attorneys by asserting she was inexperienced to be a vocational expert. She alleges further that during a November 16, 2021, deposition, Simon's attorney questioned her in a way that mirrored the language from the June 11, 2021, letter.

Defendants did not address count 3 in the motion for summary judgment. Nevertheless, we treat the motion as one for judgment on the pleadings with regard to count 3 because it is clear that the conduct alleged in that count is protected by the litigation privilege.

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to all publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to

17

any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) The litigation privilege " 'derives from common law principles establishing a defense to the tort of defamation' " and is given a "broad interpretation" in order to curtail derivative lawsuits. (*Ibid*.) "[T]he privilege is not restricted to the actual parties to the lawsuit but need merely be connected or related to the proceedings." (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.) " ' "Any doubt about whether the privilege applies is resolved in favor of applying it." ' [Citation.]" (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 116.)

The allegedly defamatory statements in the third count are expressly alleged to have been made during the course of litigation. Petrini alleges the deposition questions that were related to the letter were not relevant to the subject matter of the action. We are not persuaded. Petrini filed the workers' compensation claim alleging as one basis emotional distress from Simon's allegedly false statements in the letter. Counsel was entitled to explore these allegations. But in any event, the assertion that questions related to the letter were not relevant is a legal conclusion that we disregard in examining the sufficiency of the pleadings. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 551, fn. 5 [A "pleading must conform to 'the general rule that a complaint must contain only allegations of ultimate facts as opposed to allegations of . . . legal conclusions . . . .' "]; *Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1336 [a court ignores allegations that are legal conclusions].) We conclude the litigation privilege applies and the third count does not state a cause of action.

## C.    *Second Cause of Action*

Petrini's second cause of action is for coerced self-publication – defamation. She alleges she applied to several jobs and was required to self-publish the fact of and reasons

18

for her termination from employment with Defendants, the reasons for which she alleges were fabricated. Petrini specifically alleges this was necessary for her application to the County of Santa Cruz, Juvenile Justice Department.

Coerced self-publication, also known as compelled self-publication, is a theory under which the need for publication by the defendant to a third party in a defamation cause of action is eliminated. (*Tilkey*, *supra*, 56 Cal.App.5th at p. 542.) This exception to the publication requirement applies "[w]hen it was foreseeable that a defendant's act would result in publication to a third person." (*Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1284.) "The 'coercion' aspect of the exception applies 'where the originator of the defamatory statement has reason to believe that the person defamed will be under a strong compulsion to disclose the contents of the defamatory statement to a third person *after* he has read it or been informed of its contents. [Citations.]' [Citation.]" (*Ibid*.)

Citing no evidence, Defendants' separate statement states only the following in connection with the second cause of action: "Petrini has offered no evidence that she was compelled to self-publish statements about her termination or her qualifications to any third party" and "Petrini has offered no evidence that she has self-published statements about her termination or her qualifications to any third party." This is an insufficient evidentiary showing. While a defendant may "present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing[,] . . . the defendant *must* indeed present [']evidence.' " (*Aguilar*, *supra*, 25 Cal.4th at p. 855.) "Summary judgment law in this state . . . continues to require a defendant moving for summary judgment to present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. [Fn. omitted.]" (*Id*. at p. 854.)

19

The trial court correctly concluded in its order that Defendants had failed to meet their initial burden because they failed to set forth any evidence as required by the moving party on summary judgment. The court continued, however, by stating that "even if Defendants meet their initial burden, Plaintiff's opposition fails to establish the existence of a triable issue of fact." Given Defendants' failure to meet their initial burden, Petrini had no obligation to make any effort to raise a triable issue of material fact. A "moving party's declarations or other evidence must be directed to the claims raised in the opposing party's pleadings, and his declarations and evidence must rule out all possible merit in the complaint. [Citation.] The opposing party has no obligation to present evidence countering defendant's claim until defendant has met this initial burden. [Citation.]" (*Miller v. Pepsi-Cola Bottling Co.* (1989) 210 Cal.App.3d 1554, 1557.)

Based on Defendants' failure to meet their initial burden, the motion for summary adjudication should have been denied as to the second cause of action.[5]

## D.   *Third Cause of Action*

Petrini's third cause of action is for commercial disparagement, also known as trade libel. There is some confusion in California regarding this cause of action,

---

[5] In light of Defendants' failure to meet their burden, we do not address their additional arguments in connection with the second cause of action. We note, however, that in the trial court Defendants argued that Petrini's allegation that she was compelled to self-publish was conclusory and insufficient. In doing so, Defendants cited *Estrada v. Wal-Mart Stores, Inc.* (N.D.Cal. Oct. 6, 2016, No. 16-cv-04091-LB) 2016 U.S.Dist.LEXIS 140089 (*Estrada*). In *Estrada*, the plaintiff only alleged that the defendant knew and foresaw she would be forced to republish, and that she did republish. (*Id*. at p. 27.) The court noted that the operative complaint did not give "any indication of to whom [plaintiff] was forced to communicate the statement and accusation." (*Ibid*.) That deficiency does not exist here. Petrini did allege a specific employer to whom she was forced to self-publish. Further, even if we were to find Petrini's allegations deficient, that would simply result in leave to amend the complaint. (See *McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 798 [" '[On] a motion for summary judgment, considerable liberality should be used by the trial court in allowing amendments which do not completely and entirely depart from the general area of the cause set up in the pleadings.' [Citation.]"].)

20

" 'because not only is its content blurred and uncertain, so also is its very name.  The tort has received various labels, such as "commercial disparagement," "injurious falsehood," "product disparagement," "trade libel," "disparagement of property," and "slander of goods."  These shifting names have led counsel and the courts into confusion, thinking that they were dealing with different bodies of law.  In fact, all these labels denominate the same basic legal claim.' "  (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 289.)

Stated generally, "[t]rade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner."  (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.) "A cause of action for trade libel thus requires (at a minimum): (1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages."  (*Nichols v. Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 773.)

Petrini alleges in the third cause of action that "Defendant harmed Plaintiff by making statements that disparaged Plaintiff's reputation as a vocational rehabilitation expert witness."  Petrini alleges Simon "made these statements to more than two people at the defendant's own admission on June 11, 2021," seemingly alluding to the June letter sent by Simon to Petrini regarding the reference requests.

Assuming for purposes of appeal that the June 2021 letter in fact disparaged the quality of Petrini's services, the trade libel cause of action nevertheless cannot be maintained because there is no evidence of publication to a third party that induced that party not to deal with Petrini.  As previously discussed in connection with the defamation cause of action, the evidence shows only that Simon may have published the letter to Tamara Nichols.  Simon met his initial burden by his declaration that he did not publish the letter to anyone but Petrini and his counsel.  Even if the letter was published to Nichols, however, Petrini provides no evidence that Nichols is a party who would otherwise choose to do business with Petrini and was dissuaded from doing so by the

letter. Petrini consequently does not meet her burden to raise a triable issue of material fact and summary adjudication was properly granted as to the third cause of action.

**E.    *Fourth Cause of Action***

Petrini's fourth cause of action, for intentional infliction of emotional distress, includes five counts, which are based on the same underlying conduct alleged in the first cause of action. Defendants argue the conduct underlying the fourth cause of action does not rise to the level of extreme and outrageous.

"A cause of action for intentional infliction of emotional distress exists when there is ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' [Citations.] A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.]") (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.) A plaintiff must meet a high bar to show "severe emotional distress." (*Id*. at p. 1051.) " 'Severe emotional distress means " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' [Citation.]" (*Ibid*.)

Petrini alleges Defendants' conduct was outrageous because they misrepresented her work experience to anticipated employers and clients, presented false information to the EDD, defamed her in connection with the previously discussed deposition, and defamed her with the letter of termination. She alleges further that Defendants concealed her service, experience, and training to cover for unethical hiring practices.

The conduct at issue relates to actions taken by Simon as Petrini's employer or former employer. Petrini cites no authority to support her contention that her allegations that Simon made false statements about her in the employment context rise to the level of outrageous conduct needed to maintain a cause of action for intentional infliction of

emotional distress. We conclude that Petrini's allegations are deficient as a matter of law. Generally, "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80.)

The fact that defamation is alleged does not alter this conclusion. For example, in *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1377, the plaintiff alleged a negative Yelp review "caused her to suffer 'severe emotional damage' and " 'was very emotionally upsetting to me, and has caused me to lose sleep, have stomach upset and generalized anxiety.' " The court held that the plaintiff's emotional reaction to the criticism, "*however unjustified or defamatory that criticism might have been*, does not constitute the sort of severe emotional distress of such lasting and enduring quality that no reasonable person should be expected to endure." (*Ibid*., italics added.) Here too, Simon's statements in his letters, whether true or false, do not rise to the level of outrageous conduct that can support a cause of action for intentional infliction of emotional distress.

We conclude the trial court properly granted summary adjudication as to the fourth cause of action for intentional infliction of emotional distress.

### III. DISPOSITION

The judgment is reversed. The trial court is directed to reinstate the first count of the first cause of action, and the second cause of action in the complaint. Defendants' separate motion for sanctions on the ground that Petrini's appeal is frivolous is denied. The parties shall bear their own costs on appeal in the interests of justice.

23

_____
Greenwood, P. J.

WE CONCUR:



_____
 Grover, J.



_____
 Lie, J.



H052200 Petrini v. Simon et al.